## ADOLAY v. MILLER ET AL.

[No. 8,906. Filed February 2, 1916.]

1. PHYSICIANS AND SURGEONS.—*Care and Skill Required.*—*General Rule.*—In the absence of a special agreement a physician or surgeon is deemed to impliedly contract that he possesses the reasonable and ordinary qualifications of his profession and that he will at least exercise reasonable skill, diligence and care, but a promise to effect a cure will not be implied. p. 659.

2. PHYSICIANS AND SURGEONS.—*Care and Skill Required.*—In determining whether a physician or surgeon has exercised the degree of care and skill which the law requires, regard must be had. to the advanced state of the profession at the time and in the locality in which he practices. p. 660.

3. PHYSICIANS AND SURGEONS.—*Care and Skill Required.*—*Specialists.*—A physician or surgeon employed as a specialist is bound to use the degree of skill and knowledge which is ordinarily possessed by physicians who devote special attention and study to the disease, its diagnosis and treatment, having regard to the present state of scientific knowledge. p. 660.

4.  PHYSICIANS AND SURGEONS.—*Malpractice.*—*Evidence.*—In an action for malpractice in the treatment of a fractured arm, evidence merely showing the acts of defendants as the same were observed by plaintiff and his wife, and that defendants stated that in their belief the arm would be restored to its usefulness, while in fact it was not thus restored, was not sufficient to make a case for plaintiff, since there was no evidence to give the jury a standard by which to determine whether there was a neglect of duty on the part of defendants. p. 661.

From Superior Court of Marion County (90,-514); *Charles J. Orbison*, Judge.

Action by Fred W. Adolay against Albert W. Miller and John Kolmer. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Frank S. Roby, Ward H. Watson, Sol H. Esarey* and *E. D. Salsbury*, for appellant.

*Solon J. Carter* and *D. P. Williams*, for appellees.

IBACH, C. J.—Appellant suffered a compound fracture of the bones of the right forearm and appellees, physicians and surgeons, were employed to reduce the fracture. In this suit appellant seeks to recover damages which he claims he has suffered in consequence of appellees' failure to exercise a reasonable degree of care and skill in their treatment of him. The record discloses that after the complaint was filed and before the filing of the separate answers by each defendant, separate motions to require plaintiff to make his complaint more definite and certain were overruled. At the close of plaintiff's evidence, the trial court sustained defendants' motion for a peremptory instruction in their favor, a verdict was returned accordingly and judgment for defendants entered thereon. The correctness of this action of the trial court is the only question presented for our consideration. Or, as appellant, has expressed it, the question is "whether an inference of

negligence against appellees or either of them be-
cause of omissions or commissions might have been
drawn by the jury from the facts before it."

The only evidence produced at the trial was that
introduced by appellant, and consists of the testi-
mony of himself and his wife and two skiagraphs of
the injured arm taken several weeks after the acci-
dent by another physician and surgeon. A narra-
tive statement of the testimony, portions of which
we have taken from the briefs, is as follows: Ap-
pellant was injured by being run over by a wagon,
was carried into a house close by. Doctor Miller
was called; he, together with other persons, ex-
tended and pulled on the arm using "a whole lot of
force". "After they got it together they bandaged
it up." The doctor then stated it was all right.
The splints used by him were made from pieces of a
soap box, padded with cotton, one of them was
placed on the front of the arm, the other on the back
thereof, and then bandages were wrapped around the
splints. Appellant was then moved to his home, his
arm continued to hurt but "there was no swell-
ing". He called Doctor Miller again, the same day,
because of his suffering, and he informed appellant
he could not do more, "he would have to stand his
suffering". At the request of both appellant and his
wife, Doctor Miller brought a specialist, Doctor
Kolmer, who after examining his body generally,
moved the fingers of the injured man up and down
and said, "the fingers are all right and the arm is set
all right". This visit was on Friday, the same day of
the injury. The Tuesday following Doctor Kol-
mer came again with Doctor Miller, they removed
the bandages and splints, extended the arm, manip-
ulated the fractured bones and reset the arm. They
worked on it fifteen minutes, Miller at the elbow
and Kolmer at the hand and they pulled it and

manipulated it, using "a lot of force," and after they "had it right they applied the splints and bandaged it up". Kolmer said it would be all right. Appellant wanted an "X-ray put on the arm". Kolmer said it was unnecessary. Kolmer did not visit appellant after this time, neither did he see the arm again until after the bandages and splints were removed, about twelve or thirteen weeks thereafter. Doctor Miller, however, saw him every day during the first two weeks, the second day after the doctors reset the arm, Miller removed the dressings and bandages, rubbed the arm with alcohol, replaced the splints and bandages, and continued such treatment every second day thereafter. For a period of three weeks appellant was confined to his bed because of injuries to his back and side. After he left his bed, he visited Doctor Miller in his office from time to time for ten or eleven weeks. About thirteen weeks after the accident Doctor Miller finally removed the splints and bandages. A short time before the splints were finally removed, appellant, while at Doctor Miller's office, and while he was treating him by holding his arm, rubbing it with alcohol and with the back of the hand turned up, appellant first noted a lump on his arm, and the doctor said the arm would straighten. When the splints were finally removed, appellant went to Doctor Kolmer's office and he examined the arm and he informed him that the arm could be straightened by having an operation performed.

When a physician and surgeon assumes to treat and care for a patient, in the absence of a special agreement, he is held in law to have impliedly

1. contracted that he possesses the reasonable and ordinary qualifications of his profession and that he will exercise at least reasonable skill, diligence and care in his treatment of him. This

implied contract on the part of the physician does not include a promise to effect a cure, and negligence can not be imputed because a cure is not effected, but he does impliedly promise that he will use due diligence and ordinary skill in his treatment of the patient so that a cure may follow such care and skill, and this degree of care and skill is required of him, not only in performing an operation, or administering first treatments, but he is held to the like degree of care and skill in the necessary subsequent treatments, unless he is excused from further service by the patient himself, or the physician or surgeon upon due notice refuses to treat the case further.

In determining whether the physician or surgeon has exercised the degree of care and skill which the law requires, regard must be had to the advanced state of the profession at the time of treatment and in the locality in which the physician or surgeon practices. But where a physician or surgeon is employed as a specialist on account of his peculiar learning and skill, he "was bound to bring to the discharge of his duty to patients employing him as such specialist, the degree of skill and knowledge which is ordinarily possessed by physicians who devote special attention and study to the disease, its diagnosis, and treatment, having regard to the present state of scientific knowledge." *Baker* v. *Hancock* (1902), 29 Ind. App. 456, 461, 63 N. E. 323, 64 N. E. 38. In either case, the legal duty of the general practitioner of medicine and surgery and the legal duty of the specialist must be measured by some legal standard. It must be tested by some competent evidence so that the jury may have before it a proper standard by which it may determine, whether the acts done by or the omissions of the

physician or surgeon constitute a neglect or omission of duty.

With these propositions of law before us, can it be said there is any evidence in the case from which two inferences might be reasonably drawn, either that there was a neglect of duty, or there was not? If such evidence does not appear, the question of the sufficiency of the evidence was one of law for the court and not a question of fact for the jury. The evidence in this case, to our minds, shows nothing more than the acts of the appellees while engaged in setting the injured bones of appellant's arm as the same were observed by appellant and his wife, the nature of the treatment by Doctor Miller thereafter as they observed it, the statement of appellees as to their belief that the arm would be restored to its usefulness and the fact that the arm was not straight when the splints were removed. There is no evidence from any physician who has given the jury any standard by which the fact in dispute could be properly determined, and since the jury is not permitted to draw the conclusion of unskilfulness from the result of the operation or treatment it seems to us to permit the jury to determine the case without some competent evidence as a standard from which it might be determined whether the services rendered by appellees were done with reasonable care and skilfulness would be to permit a determination of that question from mere speculation and conjecture. *McGraw* v. *Kerr* (1912), 23 Colo. App. 163, 128 Pac. 870; *Longfellow* v. *Vernon* (1915), 57 Ind. App. 611, 105 N. E. 178; *Jackson* v. *Burnham* (1895), 20 Colo. 532, 39 Pac. 577; *Sawyer* v. *Berthold* (1912), 116 Minn. 441, 134 N. W. 120. Judgment affirmed.

NOTE.—Reported in 111 N. E. 313. As to amount of care required of a physician or surgeon, see 93 Am. St. 657. On the degree of care

and skill required of a physician, see 37 L. R. A. 830; 1 Ann. Cas. 21, 306; 14 Ann. Cas. 605, for that required of a specialist, see 20 L. R. A. (N. S.) 1030; Ann. Cas. 1915 D 1124. As to the proof necessary to discharge burden of showing that the negligence or unskilfulness of the physician caused or contributed to the death or injury of the patient, see 15 L. R. A. (N. S.) 416. On the liability of physician or surgeon for failure to follow established practice as to methods of treatment, see L. R. A. 1915 C 595. See, also, under (1) 30 Cyc 1570, 1573; (2) 30 Cyc 1572· ʹ3ʹ 30 Cyc 1571; (4) 30 Cyc 1587.