## WELCH v. PAGE.

[No. 12,535. Filed November 18, 1926.]

1. APPEAL.—It is not the province of an appellate tribunal to weigh the evidence and thus determine the sufficiency of the evidence to sustain the verdict. p. 306.

2. APPEAL.—Appellant cannot complain of error in instructions when he invited such error by requesting the court to give an instruction which contained the same error. p. 308.

3. . TRIAL.—The refusal to give instructions relative to matters not within the issues is not reversible error, though they state abstract propositions of law correctly. p. 308.

4. TRIAL.—The refusal to give instructions fully covered by instructions given is not error. p. 308.

5. PHYSICIANS AND SURGEONS.—Refusal of instruction in action against a dentist held reversible error.—In an action against a dentist for failure to use proper care in treatment after extracting teeth, refusal to give an instruction requested by the defendant that the jury must be controlled by the testimony of physicians, dentists and dental surgeons in determining whether the defendant exercised ordinary care and skill, was reversible error, although the instruction included a reference to his care and skill in his examination and diagnosis, which were not within the issues. p. 310.

6. PHYSICIANS AND SURGEONS.—Instruction on evidence to be considered in action for malpractice in treatment by dentists erroneously refused.—In an action against a dentist for mal-

practice in the treatment of plaintiff's gums and jaw after extracting some teeth, where plaintiff was permitted to exhibit his injuries to the jury, it was error to refuse an instruction that the jury was bound to adopt the testimony of physicians, dentists and dental surgeons as to whether the defendant properly treated the plaintiff, and reject all other evidence.    p. 311.

7.  PHYSICIANS AND SURGEONS.—*Refusal of instruction that dentist dismissed from a case was not liable for negligence of succeeding, dentist and was not bound to show damage resulted from subsequent treatment, held reversible error.*—In an action against a dental surgeon for malpractice, a requested instruction that a dentist that is dismissed from a case is not liable for the negligence or want of skill of a succeeding physician or dentist, nor for damage or injury produced thereby, and is not bound to show that such subsequent treatment did, in fact, result in damage or injury to the plaintiff, should have been given where plaintiff had dismissed the defendant and employed a physician to treat him for the same trouble and later another dental surgeon.    p. 311.

From Sullivan Circuit Court; *Arthur E. DeBaun,* Judge.

Action by James W. Page against William Welch. From a judgment for plaintiff, the defendant appeals. *Reversed.*   By the court in banc.

*Kessinger & Hill* and *Charles D. Hunt,* for appellant.
*Weisman & Humphreys* and *Henry Bordenet,* for appellee.

NICHOLS, J.—Action by appellee against appellant to recover damages from appellant on account of injuries alleged to have been sustained by appellee while a patient under the care and treatment of appellant, a dentist—an action for malpractice.

It is averred in the complaint that on May 11, 1921, appellant was and for five years prior thereto had been, a dentist and dental surgeon, engaged in the practice of his profession at the city of Linton, Indiana.   On said day, appellee was suffering from a diseased and ulcerated tooth in his lower jaw, and employed appel-

lant to extract it and heal his jaw, and, for that purpose, appellant undertook properly to extract said tooth and treat said jaw and to attend and care for appellee. But appellant so carelessly, negligently and unskilfully conducted himself in extracting said tooth and attempting to heal said jaw as to cause said jaw to become greatly inflamed, by carelessly and negligently probing said jaw where said tooth had been extracted and scraping the bone thereof with sharp metallic instruments, which had not been cleansed before they were so used for the purpose of preventing infection and blood-poison, and carelessly and negligently failed and omitted to cleanse said wound of pus and infection which had formed therein, and that by reason thereof appellee's face and jaw became so diseased that the flesh and bone decayed, in consequence of all of which appellee's system became diseased with blood poison and a large part of the bone of said jaw wasted away, thereby weakening said bone to such an extent that the same became broken and disconnected and still so remains.

That, by reason of appellant's carelessness and negligence and unskilful treatment as aforesaid, appellee's jawbone became broken and disconnected and he was permanently disabled and made sick, and prevented from attending to his business for twelve months, and was put to great expense, for other doctors, surgeons and dentists, for medical, surgical and dental treatment, which was made necessary on account of appellee's said diseased condition, and appellee has been disfigured for life and has suffered and will continue to suffer great pain, and his health has been greatly and permanently impaired, weakened and ruined to such an extent that he has been, and will continue to be, unable to do any kind of labor.

There was a demand for judgment for $10,000.

There was an answer in general denial, trial by jury, a verdict in favor of appellee for $5,000 on which judgment was rendered.

Overruling of appellant's motion for a new trial is the error relied upon for reversal.

Appellant contends with much force and plausibility that the evidence is insufficient to support the verdict, while appellee contends that the verdict is amply supported by the evidence. It appears by appellee's evidence as set out in appellee's brief that appellant and his brother, Dr. Frank Welch, were practicing dentistry together, and that appellee first went to Dr. Frank's room, who, after an examination, informed him that it would be necessary to have the nerve blocked, and that he did not do that kind of work. He then sent him into appellant's room where, after an examination, appellant took an X-ray of the tooth, and not being satisfied therewith, he took another X-ray. Appellant then informed appellee that the tooth should be extracted, and the jaw should be scraped, there being an abcess at the root of the tooth. Appellee then told him to do whatever was necessary to be done. Thereupon, appellant blocked the nerve by the use of a hypodermic needle in the back of the jaw and followed up with three needles of medicine in and around appellee's teeth. After waiting a short time for the medicine to take effect, he extracted the tooth, and then scraped the jawbone. In doing this, appellant used an instrument with a long slim handle, and spoon-shaped at the end. This was inserted in the cavity from which the tooth had been extracted, and the bone scraped. Appellee says that, by this process, he "liked to have tore me be pieces." After having appellee rinse his mouth, appellant gave him two capsules, and sent him home. He was in appellant's office about two and one-half hours. He suffered much pain that night, and the next morning

appellant called at his home. Appellee further testified, using his language as set out in his brief, as follows:

"He examined me with about the same instrument, it looked like, and went in there and dug around a little and had me rinse my mouth out with a little solution and put some cotton in the place where he pulled the tooth and went back to town. He said he would see me the next day. He did see me the next day and followed about the same treatment he did the day before. I had lots of pain during these two days. Dr. Welch came back the next day. He took the cotton out and used a kind of syringe in my jaw and washed it out and left the cotton out. He saw this tooth again the next day at my home. He rinsed my mouth out with a weak solution of some kind and that is about all he did. I was suffering with lots of pain, I think I had fever. Dr. Welch said I did. He did not place any cotton or anything in the tooth at this time. He was there for a week or better every day, possibly longer than a week. When he quit coming to the house, he told me to come to the office if I was able. I went there every day for a number of days. I expect he treated me for practically two months through May and June. I did not get along at all, I did not do any good. * * * About two and a half weeks after the tooth was extracted, he put a poultice on my jaw. Before that he said not to do it. He said he didn't aim for it to open on the outside. I went to the office when he was not there. Dr. Frank Welch examined my tooth and after he examined it I went home. I saw Dr. William Welch that evening, he came to my house. He asked my wife if there was any antiphlogistine in the house. She told him there was not and he said to send and get some and said he wanted to put a poultice on my jaw as quickly as he could get it there. The poultice was

put on. Dr. Welch saw me the next day at his office. On that occasion it was swollen about as bad as it could be. It was just about as dark as it could be without being ready to fall off and it seemed like the flesh would fall off my jaw if it wasn't for the skin holding it there. Dr. Welch cut through the skin under the chin with a lance and then took a needle and probed up there in my jaw bone two or three times. He kept poulticing it and it finally opened, and he said it wouldn't do to open before the next morning. And he doubted if then. I went home and before twelve o'clock it broke open there and was running, and continued to run until I was operated on the second day of August. That was all Dr. Welch ever did."

On cross-examination, appellee testified that each time appellant saw him, he examined his jaw, but did not open the cavity every day. He opened the cavity when he took the cotton out. After he took the cotton out, he would wash the cavity, and put the cotton back. Appellee's other evidence pertains chiefly to his visits to other dentists and a physician while appellant was treating him, and finally to Dr. Barnard of Indianapolis, who performed a surgical operation on his jaw.

Appellant testified that after administering a local anaesthetic, he extracted two teeth, and was getting ready to extract two broken off roots and clean

1. up the rarefied area when appellee asked him what he was doing. When told, appellee said that he would not have that done. Appellant then told him that he would not have extracted the two teeth unless he was going to do the entire job. But appellee then said that he would not have it done, and got out of the chair. Appellant then told him that this was at his own risk. Appellant did not scrape or curet the jaw because appellee would not let him do so. Three witnesses testified to admissions by appellee to this

effect. But appellant did wash out the socket with Dakin's solution, to wash out any aseptic matter that might be loose at the roots. Appellant also testified fully as to the drainage of the socket, that the drainage was never closed while he treated appellee, that he used medicated cotton, and that all his instruments were thoroughly sterilized. There is no other evidence as to the condition of the instruments. Dr. Lukenbill, a witness for appellee, was treating appellee at the same time that appellant was treating him, and this without appellant's knowledge. He testified that the drainage was insufficient, but, though he treated appellee repeatedly, it does not appear that he took any steps whatever to correct the drainage until he had treated appellee as many as six different times, when he says he found it necessary to cleanse the wound. It is to be observed that appellee testified that appellant would take the cotton out, wash the cavity out, and then put the cotton back. We do not understand that appellee meant that the same cotton was put back, but that after the cavity was washed out, fresh cotton was used. Another dentist, Dr. Todd, testified that he had examined appellee's jaw, and that pus was oozing out. He told appellee to go back to his dentist and have the wound opened. There was no evidence, however, as to the length of time that had elapsed between any of appellant's treatments, and the examinations that these witnesses made. Dr. Stewart, a dentist and witness called by appellant, testified that on June 6, 1921, he called at appellant's office, on his way to a dental convention; that appellee was in the chair; that the witness saw how appellant had established drainage, and observed the general condition of the jaw on the inside; that he saw appellant remove the cotton, and saw the condition of the teeth; that he saw appellant clean out the cavity and re-establish drainage. The witness testified that appellant said in

the presence of appellee "Well, Stewart, what do you think of that?" to which the witness answered in the presence of appellee, "It looks to me like a bad jaw." Appellant then asked, "If that was your patient, what would you do with it?" The witness answered, "I would send him to an oral surgeon." Appellant replied in the presence of appellee, "That is what I advised something like a month ago." Other expert witnesses testified as to proper drainage, and proper treatment of a tooth in the condition of appellee's, and some of them gave to the jury an explanation of the X-ray plates which appellant had made. We have thus developed the evidence given at the trial, in substance, not for the purpose of weighing it and thereby determining as to its sufficiency to sustain the verdict, for that is not the province of this court; but for the reason that, as it appears to us, there is such uncertainty as to its sufficiency to support a verdict for $5,000 against appellant, that it is incumbent on this court to determine that the jury was not, in any particular, misled by the instructions. We, therefore, proceed to consider such instructions as are properly before us for consideration.

Appellant complains of each of instructions Nos. 15, 16, 17, 21 and 22 given by the court on its own motion, for the reason that each of them embraces the 2-4. element of the possession of reasonable knowledge and skill to perform the required work, while there is no charge in the complaint of the want of knowledge and skill, and that, therefore, the instructions are beyond the issues. This objection is not well taken as to instruction No. 22 which does not embrace the element of reasonable knowledge and skill. Each of the other instructions mentioned does embrace that element, but even if it be conceded that it was error to give each of the instructions for the reason that each of them went beyond the issues, and we do not so hold,

see *Goodman* v. *Bauer* (1916), 60 Ind. App. 671, 111 N. E. 315, appellant may not complain thereof, for the reason that he invited the error by tendering his instruction No. 10 containing the same element. *Duncan* v. *State* (1908), 171 Ind. 444, 86 N. E. 641.

Instructions Nos. 1 and 2 tendered by appellant and refused each would have instructed the jury as to elements that were not within the issues. There is no reversible error in refusing to give such instructions, though they state an abstract proposition of law correctly. *Lake Erie, etc., Co.* v. *Arnold* (1893), 8 Ind. App. 297, 34 N. E. 742. Instructions Nos. 7, 8 and 9 tendered by appellant and refused would have told the jury in effect that if appellee's injuries were the result of his negligence, or indiscretions, or of his refusal to follow the advice of appellant, or his refusal to permit appellant to complete the operation that he had commenced, there could be no recovery. But these instructions were fully covered by the court's instruction No. 18.

Instruction No. 11 tendered by appellant and refused, reads as follows: "The court instructs you that in considering whether the defendant in his examination, diagnosis, treatment and care of plaintiff's ailment, exercised ordinary care and skill, you cannot set up a standard of your own, but must be guided solely in that regard by the testimony of physicians, dentists and dental surgeons; and if you are unable to determine from the testimony of these experts, what constitutes ordinary care and skill under the circumstances of this case then there is a failure of proof upon the only standard for your guidance, and the evidence is therefore insufficient to warrant a verdict for the plaintiff and your verdict should be for the defendant."

Appellee contends that this instruction was properly refused because it goes beyond the issues, and, in a

measure, it does, in that it includes the element

5. of ordinary care and skill to be exercised in the examination and diagnosis of appellee's jaw while there is no contention that appellant did not properly examine and diagnose appellee's ailment, the negligence complained of being the want of ordinary care and skill in the treatment administered. But the real gist of the instruction is found in the character of testimony by which the jury must be controlled, the instruction informing the jury that it must be guided solely in that regard by the testimony of physicians, dentists, and dental surgeons. The rule that controls in the federal courts is thus stated by Judge Taft, now chief justice, in *Ewing* v. *Goode* (1897), 78 Fed. 442: "When a case concerns the highly specialized art of treating, * * * with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury." The case of *Adolay* v. *Miller* (1916), 60 Ind. App. 656, 111 N. E. 313, is to the same effect. We hold that this instruction is a correct statement of the law, and the fact that it included examination and diagnosis in its expression was not sufficient to justify its refusal. We do not consider the court's instruction No. 19, which instructed the jury that it was necessarily bound to give due consideration to the testimony of physicians, dentists and dental surgeons, sufficiently specific to justify a refusal of appellant's instruction No. 11. Instruction No. 12, tendered by appellant and refused, is substantially the same in effect as appellant's No. 11, and the giving of either would have satisfied the law.

In the course of the trial, appellee was permitted to exhibit his injuries to the jury. This having been done,

6. appellant tendered his instruction No. 13, as follows: "In this case you are necessarily bound, independent of every other consideration, to adopt the testimony of the physicians, dentists and dental surgeons, when you come to determine whether, on the facts in this case, this defendant has treated the plaintiff's ailment in a proper form, and by the proper appliances." Instruction No. 14 was substantially to the same effect. We hold that appellant was entitled to have one of these instructions given, and that instructions given by the court were not sufficiently specific to protect appellant against the impression that the jury might have received from the inspection.

7. Instruction No. 19, tendered by appellant and refused was as follows: "The court instructs the jury that where a dentist or dental surgeon is dismissed from the treatment of a case and is succeeded by another physician or dentist, whose employment constitutes a. new and independent contract, the first dentist or dental surgeon is not liable for the negligence or want of skill of the succeeding physician or dentist and is not liable for the treatment rendered or damage or injury produced by said succeeding physician or surgeon, and I charge you that the first dentist or dental surgeon is not bound to show that such treatment did, in fact, result in damage, injury or harm to plaintiff." This is a correct statement of the law, and the evidence shows that appellee dismissed appellant, employed a physician, and later another dental surgeon. The instruction should have been given.

For error in the instructions, the judgment is reversed.