## ADKINS *v.* ROPP.

[No. 15,906. Filed May 10, 1938.]

*Claycomb & Stump,* for appellant.

*Carey & Cox,* for appellee.

WOOD, J.—Appellee brought this action against appellant to recover damages because of the alleged malpractice of the appellant in the treatment of appellee's right eye, resulting in the enucleation of the eye.

Briefly summarized, the allegations of negligence are: That the appellant removed a foreign substance (a particle of old screen wire) from appellee's eye without first disinfecting it and without first sterilizing the instrument which appellant used in removing said foreign substance from the eye; that appellant did not use proper skill in removing said substance from the appellee's eye; that appellant failed, after removing said substance from the eye, to properly disinfect and treat it and to apply proper dressings and bandages; all of which unsuccessful treatment resulted in infection and ulceration in the eye, and ultimately made it necessary to have the same removed.

The complaint was in one paragraph, answered by a general denial. On these issues the case was tried to the court and a jury, resulting in a verdict and judgment in favor of appellee. The question of diagnosis was not tendered by the issues.

Within due time appellant filed a motion for a new trial. The causes alleged therefor and not waived being: That the verdict of the jury was not sustained by suffi-

cient evidence; that the verdict of the jury was contrary to law; error of the court in giving to the jury each of the instructions numbered one to eleven, inclusive, requested by the appellee; error of the court in the admission of certain testimony over the objection of the appellant. This motion was overruled, to which ruling appellant excepted and appeals to this court, assigning as errors for reversal, first, the overruling of his motion for judgment on the jury's answers to interrogatories, and second, the overruling of his motion for a new trial.

The rules which govern our Supreme Court and this court, in determining whether or not error has been committed in overruling a motion for judgment on the jury's answers to interrogatories, has been stated many times and it is not necessary that they be again set out in this opinion. With these rules in mind and being guided by them, we have examined the record, in so far as we are permitted to do under such an assignment of error, and conclude that the court did not commit error in overruling appellant's motion for judgment on the jury's answers to interrogatories.

This brings us to appellant's second assignment of error predicated upon the action of the court in overruling his motion for a new trial. Because of the result which we are compelled to reach in this case, we will pass at once to an examination of cause four of appellant's motion for a new trial, based upon the giving by the court of each of instructions numbered one to eleven, inclusive, tendered by the appellee, and first to instruction numbered eleven, which reads as follows:

"While the general rule is that where the question as to whether a surgical operation is skillfully performed or whether the care and attention following the operation was proper, are questions of science to be determined from the evidence of medical men, yet this general rule is not applicable in all cases but jurors of ordinary intelligence, sense and judgment, although not skilled in medical sci-

ence, may be capable of reaching a conclusion, without the aid of expert testimony as to whether it was proper treatment to perform an operation on a patient's eye where some cutting and scraping is done with an unsterilized and undisinfected instrument and then leave the eye unsterilized and undisinfected and exposed to the elements and without any covering or bandage of any kind to protect it from the sunlight, wind and possible germs in the air."

The degree of skill and care to be exercised by a physician and surgeon in the treatment of a patient and the result of such treatment, which the patient may expect will be obtained therefrom, has been well stated by this court in the case of *Adolay* v. *Miller* (1915), 60 Ind. App. 656, 659, 660, 111 N. E. 313, as follows:

"When a physician and surgeon assumes to treat and care for a patient, in the absence of a special agreement, he is held in law to have impliedly contracted that he possesses the reasonable and ordinary qualifications of his profession and that he will exercise at least reasonable skill, diligence and care in his treatment of him. This implied contract on the part of the physician does not include a promise to effect a cure, and negligence can not be imputed because a cure is not effected, but he does impliedly promise that he will use due diligence and ordinary skill in his treatment of the patient so that a cure may follow such care and skill, and this degree of care and skill is required of him, not only in performing an operation, or administering first treatments, but he is held to the like degree of care and skill in the necessary subsequent treatments, unless he is excused from further service by the patient himself, or the physician or surgeon upon due notice refuses to treat the case further.

"In determining whether the physician or surgeon has exercised the degree of care and skill which the law requires, regard must be had to the advanced state of the profession at the time of treatment and in the locality in which the physician or surgeon practices. But where a physician or surgeon is employed as a specialist on account of his

peculiar learning and skill, he 'was bound to bring to the discharge of his duty to patients employing him as such specialist, the degree of skill and knowledge which is ordinarily possessed by physicians who devote special attention and study to the disease, its diagnosis, and treatment, having regard to the present state of scientific knowledge.' "

See *Edwards* v. *Uland* (1923), 193 Ind. 376, 140 N. E. 546.

The next inquiry which logically presents itself for determination is, by what kind of evidence is the jury to determine whether the physician and surgeon has exercised the proper care and skill in his treatment of the patient, and whether the result obtained by the treatment meets the requirements exacted by the rules of law relating to physicians and patients, as above quoted.

In the absence of some countervailing circumstances, the general rule in malpractice cases is that, in determining whether the physician and surgeon has exercised ordinary skill and care in the diagnosis of the disease and treatment of the patient and the result obtained thereby, the jury must be guided solely by the testimony of physicians and surgeons because of the scientific nature and character of the questions usually involved in such cases, and the jury cannot set up standards of skill and care of its own. *Longfellow* v. *Vernon* (1914), 57 Ind. App. 611, 105 N. E. 178; *Adolay* v. *Miller, supra; Welch* v. *Page* (1926), 85 Ind. App. 301, 154 N. E. 24; *McCoy* v. *Buck* (1927), 87 Ind. App. 433, 157 N. E. 456; *Ewing* v. *Goode* (1897), 78 Fed. 442. This instruction not only authorized the jury to set up its own standard of skill and care without the aid of expert testimony, but it also permitted the jury to base this standard upon an assumption of certain facts as true, concerning which there was a sharp conflict in the evidence. From the language used, the jury

was permitted to assume, as a fact, that the appellant did some cutting and scraping in appellee's eye with an unsterilized and undisinfected instrument and then left the eye unsterilized and undisinfected and exposed to the elements without proper covering or dressing, and from these facts set up its own standard of care and skill without the aid of expert testimony. A careful and painstaking examination of the evidence fails to disclose that the appellant cut away any of the tissue of the appellee's eye. The evidence most favorable to the appellee was that there was an abrasion of the outer layer of the cornea where an ulcer later developed. Whether this abrasion was caused by the particle of screen wire which lodged in the eye, or from the instrument and method resorted to by the appellant in removing the particle from the eye, or from a flax seed placed in appellee's eye by his wife, in an effort to remove the particle of wire, are questions upon which there was not definite or positive evidence. Whether the instrument which appellant used in removing the particle was sterilized before it was used was a question upon which the evidence was conflicting. While the expert witnesses testified that skillful surgery would require instruments to be disinfected before being used to remove particles from the eye, there is evidence in the record that in some instances the surgeon would be justified in removing a foreign substance from the eye before trying to sterilize the instrument. Whether, after the removal of the particle from appellee's eye, the appellant disinfected and sterilized it, was a question upon which the evidence was conflicting. Whether or not it is possible to disinfect and sterilize the eye, after a foreign substance has lodged therein, in such a manner as to require resort to instruments for its removal and thus effectively prevent infection, was a question upon which the expert evidence was in conflict. That the appellant

did not put a bandage or covering over the appellee's eye after the removal of the particle of screen wire is an uncontroverted fact. But whether skillful surgery required the placing of covering over the eye after treatment, or whether the better practice was to leave the eye uncovered, was a question upon which the testimony of the expert witnesses was at variance. It seems clear, therefore, from the facts presented by the record before us in this case, that the court was not justified in giving an instruction to the jury which authorized it to set up its own standard by which to determine the presence or absence of skill and care exercised by the appellant, thus permitting the jury to ignore the testimony of the expert witnesses on this phase of the case.

Counsel for appellee seek to justify the giving of this instruction by a statement made by this court in the case of *Walker Hospital* v. *Pulley* (1920), 74 Ind. App. 659, 127 N. E. 559, where it was recognized as the general rule in malpractice cases, in which negligence is predicated upon lack of skill and care, that the court and jury must depend upon expert testimony of physicians and surgeons, but in deciding that this rule would not apply in that case this court said (p. 664) :

> "We cannot concede, however, that the general rule is applicable in all respects to the case at bar. By that statement we mean to say that, in our opinion, jurors of ordinary intelligence, sense, and judgment, although not skilled in medical science, are capable of reaching a conclusion without the aid of expert testimony as to whether it is good surgery to permit a wound to heal superficially with nearly half a yard of gauze deeply imbedded in the flesh, and likewise are capable of determining whether or not injurious consequences of some character would probably result. The exact nature and extent of the evil consequences resulting therefrom, of course, laymen would not be competent to determine without the aid of medical science. But the jurors were not without expert assistance. We

glean the following from the testimony of the men skilled in medical science."

The fact that gauze was left in the wound which was permitted to heal superficially while the gauze was still in there was an admitted fact. The court reviewed the evidence of three expert witnesses, all of whom testified that permitting the wound to heal superficially while nearly one-half yard of gauze was permitted to remain therein was not skillful surgery. So it would appear that in reaching a decision in that case, from the facts disclosed in the record, the court did not base its opinion upon the exception which it stated to the general rule, but in all events, the case does not furnish a precedent to be followed in the instant case.

Appellee's counsel also rely upon the case of *Funk* v. *Bonham* (1932), 204 Ind. 170, 183 N. E. 312. In that case it was admitted, as a fact, that a lap sponge was left in the abdomen of the patient after the completion of the surgery, and the wound was closed up with the sponge remaining therein. No expert witness testified, and no contention was made that it was skillful surgery to leave the sponge in the abdomen of the patient. One of the controlling factors on which the case pivoted was whether or not skillful surgery would permit a surgeon, performing a deep abdominal operation where it was necessary to use several sponges, to place the responsibility of the removal of the sponges from the wound upon nurses and thereby relieve the surgeon from that responsibility. In deciding the case the Supreme Court said (pp. 176, 181) : "We believe that, in the case at bar, the necessity for expert testimony was a matter of defense, and that the rule of *res ipsa loquitur* applies, which put upon the appellant the burden of proving to the satisfaction of the jury, in order to present a complete defense, that he was not negligent in leaving the sponge in appellee's abdomen. . . . The hand-

ling and placing of sponges in the body in an abdominal operation might be a matter which would depend upon expert testimony, but the failure to remove such sponges after the operation, they not being necessary for use in the abdomen after the closing of the incision, was not a matter which depended solely upon expert testimony." Because of the disparity in the facts in the Funk case and the case at bar, we do not think that case furnishes a precedent which would sustain the giving of this instruction

Finally, counsel for appellee correctly contend that instructions given to the jury must be considered as a whole, and that if when so considered they present the law correctly, the judgment will not be reversed, though a single instruction standing alone might seem to be incorrect, and counsel call our attention to instructions numbered eight and nine, tendered by the appellant and given to the jury, in which it was correctly instructed on this phase of the case. Said instructions eight and nine were applicable to the evidence and did correctly state the rule of law by which the jury should have been guided in its deliberations, but instruction numbered eleven, of which appellant complains, was not applicable to the evidence and permitted to jury to apply principles of law in its deliberations, antagonistic to those announced in said instructions eight and nine. "The fact that the court correctly stated the law in other instructions given does not cure the error. 'This could only be done,' said the court in *Wenning* v. *Teeple* (1896), 144 Ind. 189, 41 N. E. 600, 'by plainly withdrawing the instructions named from the jury, which was not done in this case. . . . Besides, if two or more instructions are inconsistent and calculated to mislead the jury or leave them in doubt as to the law, it is a cause for reversal.' " *Cleveland, etc., Ry. Co.* v. *Snow* (1905), 37 Ind. App. 646, 654, 74 N. E. 908,

and authorities there cited. *Pittsburgh, etc., Ry. Co.* v. *Boughton* (1923), 81 Ind. App. 129, 142 N. E. 869; *Chicago, etc., Ry. Co.* v. *Fretz* (1909), 143 Ind. 519, 90 N. E. 76. It was error to give instruction numbered eleven tendered by appellee.

Other alleged causes for a new trial are discussed by appellant, but since these alleged errors will probably not occur upon a retrial of this cause, we do not extend this opinion for the purpose of discussing them.

The judgment is reversed with instruction to the trial court to sustain appellant's motion for a new trial.