290 N.E.2d 80 (1972)
MEMORIAL HOSPITAL OF SOUTH BEND, INC., Appellant (Defendant below),
v.
Richard E. SCOTT, Appellee (Plaintiff below), Justin Keenan, M.D. and Bernard A. Mason, M.D., Appellees (Defendants below).
No. 1271A253.
Court of Appeals of Indiana, Third District.
December 12, 1972.
Rehearing Denied February 9, 1973.
*82 Roland Obenchain, South Bend, for appellant.
J. Chester Allen, Jr., Arthur A. May of Crumpacker, May, Levy & Searer, South Bend, for appellees.
STATON, Judge.
STATEMENT ON THE APPEAL: Dr. Mason had made a tentative diagnosis of multiple sclerosis. To confirm this diagnosis, he requested that Richard E. Scott be examined by Dr. Keenan at the Memorial Hospital. While using the bathroom facilities in his room at the hospital, Richard E. Scott turned the hot water knob connected to the bedpan flusher behind the toilet. Hot water severely burned his back and legs. He filed a cause of action against the Memorial Hospital of South Bend, Inc. for alleged negligence. Later, he filed additional causes of action against both doctors for alleged malpractice. Damages were demanded in the total sum of One Million ($1,000,000.00) Dollars.
These several causes of action were tried by jury. Dr. Mason filed a motion for judgment on the evidence under Rule TR. 50 of the Indiana Rules of Procedure IC 1971, 34-5-1-1, which was granted. The actions against Memorial Hospital and Dr. Keenan were submitted to the jury which found in their favor. A negative verdict was returned by the jury. Richard E. Scott filed his motion to correct errors. The motion was sustained as to Memorial Hospital but denied as to Doctors Mason and Keenan.
Memorial Hospital brings this appeal contending that the trial court committed error by granting Richard E. Scott a new trial. Richard E. Scott has filed cross-errors contending that the trial court should have granted his motion to correct errors as to Doctors Mason and Keenan.
In our opinion which follows, we reverse the trial court's judgment wherein it grants Richard E. Scott's motion to correct errors as to Memorial Hospital and affirm the trial court's judgment wherein it denies Richard E. Scott's motion to correct errors as to Doctors Mason and Keenan.
STATEMENT OF THE FACTS: Multiple sclerosis was the tentative diagnosis after a second visit to Dr. Mason. He suggested that Richard E. Scott be admitted to Memorial Hospital so that the diagnosis might be confirmed. Dr. Keenan, a specialist in neurology, would perform the diagnostic tests. On August 26, 1967 Richard E. Scott was admitted to Memorial Hospital for a spinal tap, skull x-ray, brain scan and confirmatory diagnosis.
When Mary Ann Freed came on duty September 4, 1967 at 10:00 o'clock A.M., the supervising nurse suggested that she go to Three West. There, she was to assist Richard E. Scott. Her testimony explains what took place that morning:
"I checked the records and orders to see what was going on with Mr. Scott's case. I found that he had had a lumbar puncture earlier that morning and that he had been prepared with an injection with a type of sedative. (R. 425) It was fifty milligrams of Thoracin. When I came on duty that morning Mr. Scott was resting quietly in bed, his mother was there and it appeared that he had been dozing off and on most of the morning. He woke up and talked to me and seemed alert. He looked like someone that had just wakened up, not drugged and not dopey, a little sleepy. We had a discussion about what his schedule would be that morning. I asked him if he was ready to take his bath and get cleaned up for the morning. *83 It was getting on towards noon hour, time for lunch. He decided he didn't want to take a bath at that time. (R. 426) He said he just didn't feel up to it right at that time. We decided that I would make his bed and straighten up his bedding so he got up in his chair. I believe I did assist him to his chair. Then I started making his bed and he decided that he wanted to go to the bathroom so I assisted him into the bathroom and left him in there and proceeded to make the bed. The door was closed. When I helped him in the bathroom I presumed he was going to go to the toilet. I don't recall actually helping him be seated. I don't remember. (R. 427) Mr. Scott was in the bathroom two or three minutes before I did anything. I called to him to ask him if he was all right and he said, `yes'. I continued making the bed. Another five minutes elapsed. I called to him and asked him if he was ready to go back to bed. He said he wasn't. I continued to work around in the room and finished up within a couple minutes. I believe I called to him again to ask if he was finished and he answered me to ask me to come in (R. 428) for a moment. I went into the bathroom, opened the door and found him. I saw Mr. Scott sitting on the toilet and water was running over his back and shoulders from an extension pipe from the plumbing fixtures. The connection was at the back of the toilet and it ran up along the wall overhead. The extension is up against the wall as such and it has a curve over to it and it was fairly well up against the wall. It was placed directly behind the toilet. If I was sitting on the toilet the pipe would be located directly above, practically centered on my back. I am not aware of another name for that apparatus. (R. 429) It was originally for pulling down over the toilet to wash out bedpans. With your back against the wall the faucets would be located to your right. As I faced the toilet the hot water would be on the left side, the cold water would be on the right side. (R. 430) I don't recall that the water was striking other parts of his body. I immediately turned off the hot water faucet. I tried to help him stand up and was unable to get him to stand. I went and got help. The water was hot. I went down the hall to the nurses' station. I found Mrs. Selmer the head nurse and asked her to (R. 431) come back and help me. She assisted me and we helped Mr. Scott back into bed. I observed reddened areas and blistered areas over Mr. Scott's back and thighs."[1]
Richard E. Scott filed a cause of action against the Memorial Hospital of South Bend, Inc. on September 25, 1968. Later, on March 14, 1969, he filed an amended complaint adding Dr. Mason and Dr. Keenan as defendants. A jury trial began on November 16, 1970 which resulted in the granting of a motion for judgment on the evidence as to Dr. Mason and a negative verdict as to Memorial Hospital and Dr. Keenan. Richard E. Scott filed his motion to correct errors on December 18, 1970. The trial court ruled upon his motion to correct errors approximately 10 months later on September 27, 1971 and granted a new trial as to Memorial Hospital. Richard E. Scott's motion to correct errors was denied as to Doctors Mason and Keenan. Memorial Hospital appealed and Richard E. Scott filed cross-errors. Oral argument was concluded before this Court at Notre Dame University in South Bend, Indiana on October 6, 1972.
STATEMENT OF THE ISSUES: The issues will be treated separately as they relate to each of the several litigants. First, Memorial Hospital's appeal of the trial court's granting of a new trial as to it only *84 will be discussed. In this inquiry, we are restricted in our consideration to the propriety of the trial court's ruling and to the specific reasons set forth in its granting of Richard E. Scott's motion. Holcomb v. Miller (1971), Ind. App., 269 N.E.2d 885.
Secondly, Richard E. Scott's cross-errors on appeal seek a review of the trial court's propriety of granting Dr. Mason's motion for judgment on the evidence under Rule TR. 50 of the Indiana Rules of Procedure and whether the issue of contributory negligence should have been withdrawn from the jury. These issues will be discussed under separate sections denominated by the names of Memorial Hospital, Dr. Mason and Dr. Keenan. It is Richard E. Scott's contention that the trial court should have granted a new trial as to each of the doctors as well as to Memorial Hospital.
STATEMENT OF THE LAW:

I.

Memorial Hospital
The jury returned a verdict in favor of Memorial Hospital and Dr. Keenan. This negative verdict by the jury could have several implications: (1) The jury felt that Richard E. Scott failed to prove any negligence on the part of Memorial Hospital or Dr. Keenan; (2) The jury felt that Memorial Hospital and Dr. Keenan had met their burden of proving that Richard E. Scott was contributorily negligent; or (3) both of the foregoing propositions.
The trial court's ruling indicates that it did not consider the jury's verdict in accord with the evidence.[2] Such a ruling in the present case must incorporate two premises: (1) that Memorial Hospital was negligent and (2) that Richard E. Scott was not contributorily negligent. If the trial court's ruling is incorrect as to either premise, the jury's verdict must stand and the trial court's ruling as to Memorial Hospital must be reversed.
We will first examine the trial court's ruling which sustained Richard E. Scott's motion to correct errors as to premise two, contributory negligence. The trial court stated in its ruling that:
"The court finds no evidence of his prior knowledge of the presence of the bed pan flusher installation, no evidence of his awareness of danger of hot water being emitted from the flusher mounted behind his back, and no evidence of his assumption or incurral of the risk of being scalded while using the bathroom stool."[3]
As to Memorial Hospital's burden of proof, the trial court stated:
"The court finds no evidence of his prior knowledge of the presence of the bed pan flusher installation, no evidence of his awareness of danger of hot water..."
The basis of the trial court's ruling is that the verdict "is not supported by [any of] the evidence."[4]
*85 A cursory reading of Riesbeck Drug Co. v. Wray (1942), 111 Ind. App. 467, 39 N.E.2d 776, would support the assumption that actual knowledge or appreciation of danger is necessary. Riesbeck Drug Co. v. Wray, supra, 111 Ind. App. at 475, 39 N.E.2d at 779, stated:
"... Knowledge and appreciation of peril are essential elements of contributory negligence, and evidence is admissible to show a plaintiff's mental condition to aid the jury in determining whether he understood and appreciated the danger. 38 Am.Jur., Negligence, Sec. 201 p. 882."
Riesbeck Drug Co. v. Wray, supra, relies upon 38 Am.Jur., Negligence, § 201. § 201 refers to § 184 which we feel states the rule more accurately.
"Generally.  Fault on the part of the defendant is to be found in action or non-action accompanied by knowledge, actual or implied, of the probable results of his conduct; and fault on the part of the plaintiff is to be determined by the same test. An essential element of contributory negligence is that the person to be charged therewith knew, or by the exercise of ordinary care should have known, of the circumstance or condition out of which the danger arose... . As it is generally expressed, a plaintiff will not be held to have been guilty of contributory negligence if it appears that he had no knowledge or means of knowledge of the danger, and conversely, he will be deemed to have been guilty if it is shown that he knew or reasonably should have known of the peril and might have avoided it by the exercise of ordinary care." 38 Am.Jur., Negligence § 184, pp. 860-861.
"Contributory negligence does not depend upon actual knowledge of the danger; it is sufficient that under the circumstances the plaintiff reasonably should have known of it, or anticipated it. In other words, a plaintiff may be charged with negligence not only if he was actually aware of the danger present and did not take proper precautions to avoid it, but also if in the exercise of ordinary care he should have been aware of the danger and failed to take such precautions." 57 Am.Jur.2d, Imputed Knowledge, § 325, pp. 726-727.
Therefore, assuming that Scott did not have actual knowledge of the danger, if it were shown by Memorial Hospital that a reasonable and prudent person in like or similar circumstances would have known and appreciated the danger, then Scott still could have been guilty of contributory negligence. *86 Such a verdict by the jury would have been consistent with Jenkins v. City of Fort Wayne (1965), 139 Ind. App. 1, 3-4, 210 N.E.2d 390, 392, 212 N.E.2d 916, which held:
"... [T]he correct definition of contributory negligence was set out in Bain, Admx. v. Mattmiller (1938), 213 Ind. 549, at page 555, 13 N.E.2d 712, at page 714, as follows:
`... If an injured person does or omits to do some act or thing which a reasonably careful and prudent person would not have done or omitted to do under the same or like circumstances and such act or omission causes or partly causes or contributes to his injury, this is contributory negligence.'"
The trial court's reason for granting a new trial, no contributory negligence on behalf of Richard E. Scott, does not take into consideration the test of a reasonably prudent person in like or similar circumstances. It is incorrect.
"Since we herein determine that as a matter of law the ... reason stated by the trial court for granting ... [plaintiff] a new trial was incorrect, we do not reach that phase of judicial review which concerns the application of the standards set forth in Bailey v. Kain (1963), 135 Ind. App. 657, 192 N.E.2d 486." Holcomb v. Miller, supra, 269 N.E.2d at 887. Therefore, we conclude that the trial court's judgment as to Memorial Hospital should be reversed.

II.

Dr. Mason
Richard E. Scott contends in his cross-errors that it was error for the trial court to grant Dr. Mason's motion for judgment on the evidence after all the evidence has been submitted. On the other hand, Dr. Mason contends that:
"There is a complete lack of any evidence which could possibly suggest that any such breach or malpractice on the part of Dr. Mason could be a proximate cause of any alleged injury to Richard Scott."
When a motion for judgment on the evidence is made under Rule TR. 50 of the Indiana Rules of Procedure:
"[The] court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion, and to that party give every favorable intendment of the evidence, and a judgment cannot be entered unless there is insufficient evidence to sustain a verdict for the non-moving party." 3 Ind.Prac.  Rules of Civ.Proc., Harvey, p. 370.
"We need only say here that a trial court should not... [grant a motion for judgment on the evidence] if the evidence is such that the minds of reasonable men might differ, or if the determination of negligence depends on conflicting evidence." Wroblewski v. Grand Trunk Western R.R. Co. (1971), Ind. App., 276 N.E.2d 567, 571.
See also, Mamula v. Ford Motor Co. (1971), Ind. App., 275 N.E.2d 849; and Farmer v. Werner Transportation Co. (1972), Ind. App., 284 N.E.2d 861.[5]
If there is a void in the evidence as to causation, the trial court properly granted Dr. Mason's motion for judgment on the evidence. New York Central R.R. Co. v. Cavinder (1965), 141 Ind. App. 42, 49, 211 N.E.2d 502, 507, states a very good description of proximate cause which is applicable to the cause before us:
"A proximate cause of an injury is the cause which sets in motion the chain of *87 circumstances leading up to the injury and has been defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred."
Reviewing the evidence most favorable to Richard E. Scott, we find that Dr. Schultheis did state that in his opinion, the writing of an order "up ad-lib" did not come up to the reasonable standards of practicing physicians.[6] It was his opinion that a physician should have written an order which placed the hospital staff on notice as to some observation or limitation of Richard Scott's activities: "so that he was not completely on his own." Dr. Schultheis' opinion was that an order should have been written that Scott was to be up but with an assistant or supervision for his own protection. According to Dr. Schultheis, the malpractice of Dr. Mason was in writing an order which allowed the patient to use the bathroom facilities without supervision. In his opinion, an order should have been entered to the effect that Scott was to use the bathroom with supervision. In order for the writing of the order "up ad-lib" to be the proximate cause of the injury, the cause of Scott's injury would have to be that he went to the bathroom without supervision and as a result of this lack of supervision, he was injured.
Nurse Mary Ann Freed testified that she assisted Scott into the bathroom. She remained outside the bathroom, and she inquired how he was doing every few minutes. The only possible inference of malpractice in writing the order "up ad-lib" would be that if Dr. Mason had written "up with assistance or supervision" the nurse or a male attendant would have gone into the bathroom and stayed with Scott during his bowel movement. There is no evidence from which even a reasonable inference can be drawn which would indicate that the order Dr. Schultheis recommended would have provided this type of supervision. Richard E. Scott in his reply brief states that under proper orders from Dr. Mason, the nurse would have rendered more assistance. However, there is no showing of what type of order would have required someone to have been in the bathroom with Richard E. Scott. Dr. Schultheis testified that the orders upon the admittance of a patient can range from total bed confinement to up without any assistance. There is no testimony from Dr. Schultheis that if the order that he recommended would have been given that it would have required the nurse to have been in the bathroom during Richard E. Scott's bowel movement. Under such facts, the trial court was justified in holding that Dr. Mason was not negligent and properly withdrew the issue of Dr. Mason's negligence from the jury.

III.

Dr. Keenan
Richard E. Scott contends in his cross-errors that the trial court should have sustained his motion for judgment on the evidence and motion for withdrawal of the contributory negligence issue from the jury. His motion to correct errors states the contended error as follows:
"(1) Uncorrected errors of law occurring and properly raised in the proceedings and trial, to-wit; (A) the court erred in that it denied Plaintiff's Trial Rule 50 Motion for Judgment on the Evidence and withdrawal of the issue of plaintiff's contributory negligence from the jury; which motion was filed after the close of defendants' case. The evidence was uncontroverted in that plaintiff has no knowledge of a bedpan flusher *88 being present in his bathroom or that it might be turned on by his action."
Our examination of the record shows at page 825 the following motion made by Richard E. Scott after all the evidence had been submitted:
"Comes now the plaintiff who moves the Court to withdraw from the jury the issue of plaintiff's assumption of risk and render judgment thereon for plaintiff for the reason that defendants have produced insufficient evidence to sustain the issue on this."
Dr. Keenan concedes that the trial court withdrew the issue of incurral of risk from the jury after this motion was made, but denies that any motion was made for the withdrawal of the contributory negligence issue. The record confirms Dr. Keenan's position.[7]
Our examination of the record shows that proposed jury instructions had been submitted. The verbal exchange between the attorneys and the court appears to have revolved around the issue of contributory negligence and these instructions. After this verbal exchange, the record shows that Richard E. Scott tendered the following instruction which was given by the trial court:
"PLAINTIFF'S INSTRUCTION NO. 4
You are instructed that in determining ordinary care of Defendants as to Plaintiff in this case, you may consider the physical and mental ailments of Plaintiff which may have affected his ability to look after his own safety.
Similarly, you may consider such physical and mental ailments of Plaintiff in determining his ordinary care on the issue of contributory negligence or assumption of risk." (modification by the court).
Dr. Keenan's tendered instruction No. 5 was given by the court and no objection was made by Richard E. Scott to the giving of this instruction to the jury:
"DEFENDANTS', DRS. MASON AND KEENAN, REQUESTED INSTRUCTION NO. 5
Contributory negligence which is a defense in this case is any negligence however slight on the part of the plaintiff, Richard Scott, which proximately causes or contributes to his injury or damage complained of and will prevent his recovery from any of the defendants herein even though you may find one or all of the defendants may have also been guilty of negligence which may have also proximately caused or contributed to the plaintiffs injuries complained of, if any."
The issue of contributory negligence was submitted to the jury without objection, without a motion or instruction to withdraw the issue of contributory negligence from the jury. The question is not properly raised here on appeal. It has been waived. Barton v. Mirich (1971), Ind. App., 273 N.E.2d 115.
DECISION OF THE COURT: The trial court granted a new trial under Rule TR. 59(E) of the Indiana Rules of Procedure and stated in substance that the jury's verdict "is not supported by [any of] the evidence." Lack of actual knowledge of the bedpan flusher and lack of actual awareness of the hot water which might flow from it is not a proper test of whether the evidence supports the jury's verdict on Richard E. Scott's contributory negligence. The test is whether a reasonably prudent person in like or similar circumstances with the exercise of ordinary care would have known or would have been aware of the bedpan flusher and the *89 injury it could inflict if the hot water faucet were turned on.[8]
A review of the evidence clearly indicates that there was a causation void in the evidence as to Dr. Mason. The trial court did not commit reversible error by granting Dr. Mason's motion for judgment on the evidence. There was no showing that had an order been written as suggested by Dr. Schultheis it would have required supervision of a nature other than the supervision given by the hospital.
Withdrawal of the contributory negligence issue from the jury was waived. The record discloses that no motion was made to withdraw the issue from the jury. Instructions were given to the jury on contributory negligence without objection. The trial court did not commit error when it failed to grant the relief requested by Richard E. Scott in his motion to correct errors.
The trial court's judgment as to Memorial Hospital is reversed with instructions to enter judgment in accordance with the jury's verdict. The trial court's judgment is affirmed wherein it overrules Richard E. Scott's motion to correct errors as to Appellees Bernard A. Mason, M.D. and Justin Keenan, M.D.
HOFFMAN, C.J., and SHARP, J., concur.
NOTES
[1] Appellant's Brief, pages 29-30, and indicated pages of the transcript. The testimony of Mary Ann Freed is a very accurate description of what took place on the morning of September 4, 1967.
[2] Rule TR. 59(E) of the Indiana Rules of Procedure. See also footnote 4 herein.
[3] The issue of incurral of risk was withdrawn from the jury; therefore, that part of the reasons are of no concern to us on this appeal. For cases drawing a distinction between contributory negligence, incurred risk and assumption of risk, see: Indiana Natural Gas & Oil Co. v. O'Brien (1903), 160 Ind. 266, 65 N.E. 918, 66 N.E. 742; Cleveland, Cincinnati, Chicago & St. Louis R.R. v. Lynn (1911), 177 Ind. 311, 95 N.E. 577, 98 N.E. 67; Pierce v. Clemens (1943), 113 Ind. App. 65, 46 N.E.2d 836; and 82 A.L.R.2d 1218.
[4] Rule TR. 59(E). In Borowski v. Rupert (1972), Ind. App., 281 N.E.2d 502, 509-510, this Court explained the operation of Rule TR. 59(E) as follows:

"This paragraph as set forth above contemplates two courses of action by the trial court:
(A) An order correcting the error without a new trial, and
(B) An order for a new trial.
"Course of Action (A) by the Trial Court: The order correcting the error shall (a) direct final judgment to be entered or (b) correct the error without a new trial. When granting the corrective relief, the trial court shall specify the general reasons for granting the corrective relief. If this relief is shown to be impracticable or unfair to any of the parties or otherwise improper, the trial court should follow the second course of action which is Course of Action (B).
"Course of Action (B) by the Trial Court: This order correcting error requires a new trial which shall be limited to those parties and issues effected by the error. If the order limiting the new trial to just those parties and issues affected by the error is shown to be impracticable or unfair, the trial court should expand its order for a new trial to include those parties and issues assuring practicability and fairness.
"When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the trial court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. These findings should indicate:
(a) Whether the decision is against the weight of the evidence, or
(b) Whether the decision is clearly erroneous as contrary to the evidence, or
(c) Whether the decision is not supported by the evidence.
"If the decision is found to be either (b) or (c), the findings shall show why judgment was not entered upon the evidence. If the decision is found to be against the weight of the evidence which is (a), the trial court's findings shall relate the supporting and opposing evidence on each issue upon which a new trial is granted."
[5] It should be remembered that the test for granting a motion for judgment on the evidence at the close of plaintiff's case in chief is the same test applied when granting a motion for judgment on the evidence at the close of all the evidence.
[6] For a case setting out the duty of care required of physicians see Adkins v. Ropp (1938), 105 Ind. App. 331, 14 N.E.2d 727.
[7] We cannot consider on appeal, any contention of error which is not a part of the record before us. Hansbrough v. State (1950), 228 Ind. 688, 94 N.E.2d 534.
[8] The issue of contributory negligence was submitted to the jury. Some of the evidence before the jury on this question was the admittance of Richard E. Scott on August 26, 1967 and the date of the accident, September 4, 1967. The jury could have inferred from this evidence that Richard E. Scott had used the bathroom facilities during this period of time without injury prior to the accident. It could further infer from the photographs submitted that he had used the lever near the toilet seat while using the bathroom facilities rather than the faucet to the bedpan flusher which is nearer to the shoulder level. Dr. Robert L. Parson testified that on August 30, 1967 he examined Richard E. Scott and that Richard E. Scott was capable of getting up and going to the bathroom by himself. Dr. Martin Feferman testified that on November 5, 1970 he examined Richard E. Scott and found that his condition had not deteriorated to a point where he was not in touch with reality. He further testified that Richard E. Scott could tell the difference between hot and cold. There was further testimony that this type of toilet had been used in the high school that Richard Scott had attended. Richard Trenkner, hospital administrator, testified that the hospital room in the St. Joseph Hospital where Richard Scott was on a prior occasion had the identically same lavatory set-up as the room in the Memorial Hospital where he was injured. The jury could have inferred from this evidence as well as other evidence which we have not incorporated here for the lack of space that Richard E. Scott was contributorily negligent. (The nurse testified that just prior to the accident Richard E. Scott seemed alert and in touch with reality. Much of this testimony can be reviewed by referring to the Statement of Fact section of this opinion.)