[Civ. No. 7265. Third Dist. Sept. 24, 1946.]

JANE A. TOMEY, Respondent, v. ROBERT DYSON et al., Appellants.

214

Van Dyke & Harris for Appellants.

Francis O. Hoover, R. R. Fowler and Edward M. Lacy for Respondent.

THOMPSON, J.—The defendants appealed from a judgment of $6,784.90 rendered against them in a suit for damages for personal injuries received as the result of negligently backing an automobile from the sidewalk curb in Modesto, where it was parked, upon and over plaintiff who was attempting to walk across the street in the middle of a block. The cause was tried by the judge sitting without a jury. The court found that plaintiff's injuries were caused by the negligence of the driver of defendant's car, and that plaintiff was not guilty of contributory negligence.

The appellants contend that the findings and judgment are not supported by the evidence; that the defendants were free from negligence; that plaintiff was guilty of contributory negligence as the sole cause of the accident, and that the court erroneously admitted in evidence certain incompetent proof of damages.

Gordon A. Wight Company is a copartnership engaged in the business of operating an automobile repair and tow car business in Modesto. Robert Dyson, who was employed by the copartnership as a mechanic, was driving defendant's tow car at the time of the accident. The plaintiff is an elderly lady, 76 years of age, and quite deaf. She was, however, well,

strong, spry and alert for her age. She was in good health and walked briskly. She resided in Modesto near the scene of the accident, which was in the business portion of the city, and was familiar with traffic conditions in that vicinity. She was shopping and had two or three small packages in her arm at the time of the accident, one of which contained a small enameled vessel.

The accident occurred on 11th Street, about 150 feet southeasterly of its intersection with H Street. Mrs. Tomey was attempting to cross 11th Street from the southerly curb. A store building occupied by Strong's Auto Parts extended along the property line on 11th Street, easterly from H Street, some distance beyond the place where the accident occurred. The sidewalk was 16 feet wide from that building to the curb. The front entrance to the building was on H Street, but there is a side entrance on 11th Street about 130 feet from the corner of H Street. A 15-foot open driveway leads from 11th Street across the sidewalk to that entrance, evidently used for the delivery of merchandise. There is another similar side entrance to the building, over another 15-foot driveway situated about 35 feet westerly from the first mentioned driveway. Adjacent to the sidewalk, on the southerly side of 11th Street, parking spaces for automobiles are distinctly outlined in white stripes on the concrete surface of the street. No parking spaces are reserved opposite the 15-foot driveways. Between the two driveways there are two parking spaces about eight feet in width which are outlined parallel with and adjacent to the curb. All other parking spaces on that side of the street are outlined with white stripes at an angle of 45 degrees with the curb. They are 6.65 feet in width. Easterly from the first mentioned driveway, and adjacent thereto, there is an additional open space of about 12 feet to the rear end of a 16-foot machine parked in the nearest diagonal space, where the defendant's machine was alleged to have stood. Assuming that it did occupy that first diagonal parking space, there would still be about 27 feet of open space, with a clear view of the street, to the rear end of their machine, where no automobiles were parked.

On the afternoon of January 18, 1944, Robert Dyson drove defendant's tow car, which was 16 feet in length, to Strong's accessory shop to secure some automobile equipment for repairing machines for his employer. He parked on 11th Street at the curb next to the easterly side of the first mentioned

driveway. There is a conflict of evidence as to whether he parked in the diagonal parking space or parallel with the curb. The evidence indicates that his car was not parked within the outlined space, but was much more nearly parallel with the curb or he could not have struck the plaintiff in the place where her body lay upon the pavement after he backed the machine out from its parked position. After parking his tow car, Mr. Dyson went into the store and was gone 15 or 20 minutes. It was not raining and it was broad daylight.

After Dyson entered the store, the plaintiff, Mrs. Tomey, walked along the sidewalk 100 feet or more on the southerly side of 11th Street from the corner of H Street looking for a safe place to cross the street. After passing the open space of the second driveway she stopped on the sidewalk near the parked tow car and "stood there for a few minutes" watching the traffic and examining defendant's machine. She saw defendant's machine at her right, and noticed that it was a tow car. She had not seen Dyson leave the machine or go into the building. The record indicates that she exercised much caution. The tow car was not then occupied by any person. She said that after examining the tow car she was "entirely satisfied it was entirely unoccupied." She testified that the car was parked "right along straight with the curb"; not at a right angle therewith. She then stepped off the sidewalk "quite a distance from the rear end" of the tow car, and walked into the street five or six feet from the curb where she stood about 55 seconds only, watching the traffic on the street. At the place where she stood there was an open space of about 27 feet where no cars were parked. Her view of the street was not obstructed. The first car on her left, as she faced the street, was parked parallel with the curb beyond the driveway. It did not obscure her view. While she stood in that position for less than one minute, looking to her left for approaching vehicles on the street, Mr. Dyson came back from the store along the sidewalk, past the open space where she stood. Mrs. Tomey did not see him. Entering his car, Mr. Dyson turned on the motor, reversed the gearing and backed the car against or upon plaintiff, knocking her down and breaking her left femur—the thigh bone—and otherwise seriously injuring her. When Dyson heard the plaintiff scream, he stopped the car and went back to her aid. He started to assist her in getting upon her feet, but, at the request of a bystander, he left her there on the pavement and went to

summon an ambulance, which arrived in about 15 minutes. The body of Mrs. Tomey lay upon the pavement five or six feet from the curb and partly upon the easterly portion of the driveway. Numerous particles of enamel broken from the vessel she carried in her arm were found in that same place. There appears to be no doubt she was not standing behind the outlined parking space within which Dyson testified that he parked his car. If she had been there, she would have stood 12 feet or more from the curb. There is no dispute regarding the place where her body lay upon the pavement. Several witnesses definitely fix the location of that spot.

We are convinced there is ample evidence to support the finding that the driver of the tow car was guilty of negligence. He should have seen the plaintiff standing in the open space. There is no evidence that Mrs. Tomey was ever farther in the street than about six feet from the curb. She must have stood some distance from the tow car in the open unobstructed space in clear view of Mr. Dyson as he passed along the sidewalk from the store to his car. If that be true, he should have seen her if he had used reasonable care in observing the street behind his car which he intended to and did back upon that open space. It is true that Mr. Dyson testified that he carefully observed the open space behind his machine, and that he saw no person standing there. On the trial he positively asserted that no one was then standing on the street in the vicinity of his car. He also stated that, after he turned on the motor and slowly backed the car from the curb, he looked through the small 12 by 18 inch window in the rear of his cab and saw no person standing on the pavement. Those statements of the driver of the machine merely raise a conflict in the evidence regarding his negligence. In view of the fact that the court definitely found that the driver of the machine was guilty of negligence which proximately caused the injuries sustained by plaintiff, we may not interfere with that conclusion under the circumstances of this case. (*Payne* v. *Wright,* 58 Cal.App. 655 [209 P. 218]; 3 Cal.Jur. § 179, p. 948; 2 Cal.Jur.10-Yr.Supp. § 293, p. 467, and cases cited; Veh. Code, § 543.) The section last cited provides that:

"No person shall start a vehicle stopped, standing or parked on a highway nor shall any person back a vehicle on a highway unless and until such movement can be made with reasonable safety."

■ Nor, conceding that it is a more serious question to determine, may we hold, upon the facts of this case, that plaintiff was guilty of contributory negligence as a matter of law. (*Payne* v. *Wright, supra;* 2 Cal.Jur.10-Yr.Supp. § 270, p. 429; Veh. Code, § 543.) ■ It is true that a pedestrian whose hearing is seriously impaired should exercise greater care than one with perfect hearing ability, in attempting to cross a public thoroughfare. But defective hearing of a pedestrian will not preclude him from recovering damages for personal injuries sustained on account of the negligence of the driver of an automobile, provided the pedestrian exercises due caution in crossing a street, under all' the surrounding circumstances of the case, including the realization that he is deprived of warning of an approaching machine by the noise of the motor or the voice of an individual. The driver did not blow the horn nor speak to her. He did not see her. We must assume that the court took into consideration Mrs. Tomey's defect of hearing in determining that she was not guilty of contributory negligence. The judge listened to a rigid examination of the plaintiff on that subject and was best able to judge of her ability to hear sounds. It does appear that she was often unable to follow a conversation. That might depend on the articulation of the speakers, or upon their distance or the clearness with which they spoke. It was demonstrated that she could hear sounds. She was by no means totally deaf. We think that was one of the elements of the question of her due care, the determination of which may not be interfered with on appeal, under the circumstances of this case. ■ The plaintiff stood on the sidewalk near the tow car several minutes, carefully examining it and the surrounding conditions to make sure it was unoccupied before she stepped off the walk into the clear, open unobstructed space adjacent to the machine. She had a right to assume that when and if the driver returned he would observe the provisions of section 543 of the Vehicle Code before he backed his car from its parked position, by first ascertaining that he might do so with reasonable safety to her. She stood about 12 feet behind the tow car, five or six feet from the curb, near the line of the driveway, only 55 seconds, looking to her left for approaching vehicles, when she was struck.

■ It is also true that a pedestrian should exercise greater care in crossing a street at a place other than upon the marked crosswalks. (2 Cal.Jur.10-Yr.Supp. § 257, p. 402.) ■ But, in

the absence of a statute or ordinance to the contrary, the mere crossing of a street in the middle of a block does not constitute contributory negligence which will preclude an injured pedestrian from recovering damages, if he uses due care commensurate with the circumstances and conditions. (*Payne* v. *Wright, supra.*) With respect to a pedestrian's right to use a public highway, it is said in *Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82 [239 P. 709, 41 A.L.R. 1027], at page 95, that,

"It is settled law that pedestrians have a right to travel anywhere upon a public highway, and it is, therefore, not negligence in them to do so. This is the common-law rule and our legislature has not changed or modified it."

The appellants invoke the application of section 562 of the Vehicle Code in support of their contention that Mrs. Tomey was guilty of contributory negligence in failing to yield the right of way. That section provides that,

"(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

"(b) The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway."

We think the preceding section is not applicable to the circumstances of this case. This cause does not involve the question of whether the pedestrian or the vehicle had a superior right to the use of the highway. Both had an equal right to the use of the highway. Both the driver of a machine and a pedestrian should exercise due care consistent with the circumstances surrounding the situation which confronts them. The yielding of a right of way, referred to in the section above cited, contemplates that the pedestrian, with knowledge of the fact that the driver of an automobile is actually using or desires to use the highway at about the same time and place, shall defer to the superior right of the machine. In the present case neither party knew of the contemplated use of the highway by the other party. Moreover, in spite of that declaration of the superior right of the vehicle, the second paragraph of that section nevertheless imposes upon the driver of a machine under such circumstances the duty to exercise due care for the safety of pedestrians upon the highway, which the court found upon satisfactory proof that he did not do. We conclude

that the foregoing section does not apply to the facts of this case, but section 543 of the same code does, as we have previously stated.

The case of *Payne* v. *Wright, supra,* in which a hearing by the Supreme Court was unanimously refused, is remarkably similar to the facts of the present case. Judgment for the plaintiff was affirmed. The plaintiff, who was crippled and walked with a crutch, was about to cross the street in the middle of a block, in company with her young grandson. There were two automobiles parked close to the curb, with a space between them wide enough for another car. After looking about her for approaching vehicles, she stepped from the sidewalk into the space between the two parked cars. Her grandson walked beyond the parked machines to see whether there were approaching vehicles in the street. While she stood there "for a moment," the defendant, without warning signal and without looking in the direction of the plaintiff, rapidly backed his machine into the space between the parked cars, where she stood, and struck and injured her. The grandson shouted a warning to her, but she had no opportunity to escape. The appellate court said there was ample evidence of defendant's negligence, and that, "A mere recital of the above [evidence] is a sufficient answer to appellant's contention that . . . plaintiff was guilty of contributory negligence as a matter of law."

In the present case the appellants insist that because plaintiff was deaf she must therefore exercise greater care in attempting to cross the street in the middle of the block. That assertion seems reasonable. But it does not necessarily mean that she was therefore guilty of contributory negligence. In the Payne case the plaintiff was also disabled. She was crippled and had to walk with a crutch. The same rule which may require a deaf person to exercise greater care would also compel a person so crippled that she had to walk with a crutch, to use greater caution, yet the court held that Mrs. Payne was not guilty of contributory negligence on that account, or for any other reason.

The burden is on the defendants to prove alleged contributory negligence on the part of the plaintiff. The finding of the trial judge that plaintiff is free from contributory negligence will not be disturbed on appeal when there is substantial evidence or reasonable inference to be drawn therefrom in support of that conclusion. A reviewing court may

not hold that plaintiff is guilty of contributory negligence as a matter of law unless there is no evidence or reasonable inference to support a contrary finding in that regard. On appeal every intendment is in favor of the finding and judgment. Even when reasonable minds may differ regarding the effect of the evidence in support of the conclusion of a trial judge, his finding should be upheld. All the facts and circumstances of the case should be weighed in a manner most favorable to the plaintiff. (*Page* v. *Cudahy Packing Co.*, 31 Cal. App.2d 282, 288 [87 P.2d 913]; *Lang* v. *Barry*, 71 Cal.App.2d 121 [161 P.2d 949]; *Foerster* v. *Direito*, 75 Cal.App.2d 323 [170 P.2d 986].)

Finally, the appellants contend that the court erred in admitting evidence of damages of payments, on account of plaintiff's injuries sustained, of $10 for Workmen's Compensation Insurance for the protection of persons employed during her convalescent period, and the further sum of $181 paid for a nurse and care for plaintiff for a period of 54 days, while she was recovering after she had left the hospital.

Regarding the item of $10 paid by the son of the plaintiff for Workmen's Compensation Insurance, it may be conceded that the record fails to disclose the fact that the insurance policy covered the services of the nurse. If it did not, that item would be improperly allowed as an element of damages. But there is no evidence that that item was included in the judgment. The evidence of that expenditure was admitted only conditionally. That condition was not supplied by further proof. The court said in that regard:

"Suppose we let it in. It won't hurt anything. Unless they [plaintiff's attorneys] can show me a necessity, unless it is required, I wouldn't charge them [the defendants] with it."

Paragraph IV of the findings specifically enumerates the items of special damages which were allowed. The item of $10 for insurance is not included therein. We must assume it was excluded from the judgment. The amount is small. It may be said to fall within the maxim of *de minimis non curat lex*. The ruling of the court in admitting the evidence is harmless.

Regarding the other challenged item of $181 which was paid for the services of a nurse and maintenance of the plaintiff in a convalescent home for 54 days while she was recovering from her injuries, we are of the opinion it was properly allowed as necessary expenses incident to the reason-

able care of plaintiff. When the plaintiff was discharged from the hospital, where she remained for three and a half months, her physician, Dr. De Lappe, recommended that she be placed in a convalescent home for recuperation. She remained under his care for six weeks after her discharge from the hospital. She was unable to dispense with her crutches during that entire period, after which she used a cane to move about the house. Pursuant to the doctor's advice plaintiff's son placed her in the home of William Rushing, who employed a trained nurse, where she remained under the care of the nurse and the supervision of the doctor for 54 days. For that service and care Rushing was paid $181. That bill apparently included some cost of maintenance. Compensation of a trained nurse for the necessary care of an injured person in a private home during her recovery from a broken thigh as the result of negligent injury, is a proper element of damages, even after her discharge from a hospital. (*New Amsterdam Casualty Co.* v. *Industrial Accident Commission,* 137 Cal.App. 719 [31 P.2d 245].) That item was a proper charge for necessary and proper treatment of the patient.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.