MEMORIAL HOSPITAL OF SOUTH BEND, INC. *v.* RICHARD E. SCOTT, JUSTIN KEENAN, M.D. AND BERNARD A. MASON, M.D.

[No. 873S158.  Filed August 16, 1973.]

*Roland Obenchain,* of South Bend, for appellant.

*J. Chester Allen, Jr., Arthur A. May,* of South Bend, for appellee.

HUNTER, J.—The instant case involves a negligence action brought against a hospital for injuries sustained by a patient. Plaintiff Scott was severely burned by hot water (140° F.) while he was using a hospital toilet. Plaintiff activated a

bed pan flusher hot water knob (shoulder level) which was located in proximity to the toilet flusher (small of back level) and was inundated by the scalding water. The facts set out below are those found by the trial court in support of his granting plaintiff's motion to correct error:

## "FINDINGS IN SUPPORT OR GRANTING OF MOTION TO CORRECT ERROR

"The court grants the motion to correct error and orders a new trial in this cause for the reasons that the verdict with respect to the defendant, Memorial Hospital of South Bend, Inc., was clearly erroneous and against the weight of the evidence and also contrary to and not supported by the evidence.

"With respect to the issue of the negligence of the defendant, appellant, Memorial Hospital, the court finds the defendant hospital was negligent in that it had notice of the dangerous and deceptive controls of the bed pan flushers installed in their hospital. This finding is based upon hospital's knowledge of two prior accidents concerning the inadvertant [sic] activation of the bed pan flusher by patients. One additional incident involved an auxiliary aide of the hospital who was in possession of normal faculties and whose work necessarily involved familiarity with the bathroom facilities. She inadvertantly [sic] turned on the hot water and suffered a reddened arm. That the head nurse reported these incidents and expressed concern over the danger to patients and requested that the handles or controls on the hot water be removed. That the head nurse of the unit was under the impression that all the hot water handles controlling the bed pan flushers in the unit were removed. That in fact such handles were removed in only part of the section, and in rooms 40 through 47 the hot water handles or controls were not removed. The evidence also showed that since the subject accident the hot water handles on the bed pan flushers were removed from all the rooms in the unit.

"There was evidence adduced by the defendant hospital indicating that the hospital facilities were erected and installed pursuant to prevailing standards for hospital construction. There was also evidence that the bed pan flusher controls were installed in various arrangements with the controls being installed on either the left or right of the toilet stool, and that hot water would come out of the flusher

even though the flusher appliance was retracted against the wall behind the stool. The evidence shows that the plaintiff, appellee, used said stool and inadvertantly [sic] turned on the hot water of the bed pan flusher in an attempt to flush the toilet.

"With respect to the second major issue, that of contributory negligence or assumption or incurral of the risk by the plaintiff, appellee, the court's finding is that the plaintiff was not contributorily negligent nor did he assume or incur the risk of scalding himself with hot water from the bed pan flusher.

"This finding is based on the evidence of record which showed that the patient was suffering from multiple sclerosis, that his known and recorded symptoms were lack of muscular co-ordination, difficiulty [sic] with vision, weakness in right arm and leg and in grip of right hand, occasional difficulty in walking and in distinguishing shapes. The plaintiff had hand trembles or intention tremors, vertical nystagumus or involuntary oscillatory eyeball movements, that sometimes his eyes would not focus and he would have some difficulty maintaining his balance. That on the morning of the accident he was subject to a spinal puncture and he was given an injection of thorazine. That the internist was of the opinion that he himself would not drive an automobile for four hours after being injected with thorazine. That a normal consequence of spinal puncture and thorazine injection was a headache. That the plaintiff, appellee, at sometime more than hour after the thorazine injection expressed the desire to use the bathroom. He was never instructed or warned about the bed pan flusher appliance mounted above and behind the toilet stool. That he remembers attempting to flush the toilet while he remained seated because he wasn't sure he was completed with his toilet function. He remembered touching a knob, and then he remembers the hot water.

"The court finds no evidence of his prior knowledge of the presence of the bed pan flusher installation, no evidence of his awareness of danger of hot water being emitted from the flusher mounted behind his back, and no evidence of his assumption or incurral of the risk of being scalded while using the bathroom stool.

"Norman Kopec   /s/
"Norman Kopec, Judge
"St. Joseph  Superior  Court"

The jury returned a negative verdict on the issue of the hospital's negligence. Plaintiff's motion to correct errors was sustained by the trial court, *supra,* granting a new trial. The hospital appealed and the Court of Appeals reversed the trial court's judgment. *Memorial Hospital of South Bend, Inc.* v. *Scott* (1972), 290 N. E. 2d 80. Plaintiff has petitioned this Court for transfer of his cause. The following issues are raised in his petition:

(1) Was the Court of Appeals correct in holding, as a matter of law, that the trial court was unaware of the correct test of contributory negligence?

(2) What is the correct standard of law to be applied on the issue of contributory negligence?

(3) Did the Court of Appeals apply the correct standard to the facts of the instant case?

It is established in Indiana that the burden of proving contributory negligence is on the defendant. *Sheptak* v. *Davis* (1965), 246 Ind. 499, 205 N. E. 2d 548. The trial court in the instant case has determined that the hospital failed to meet its burden of proof on the issue of Scott's contributory negligence. In discussing this issue, the Court of Appeals states:

> "The trial court's ruling indicates that it did not consider the jury's verdict in accord with the evidence. Such a ruling in the present case must incorporate two premises: (1) that Memorial Hospital was negligent and (2) that Richard E. Scott was not contributorily negligent. *If the trial court's ruling is incorrect as to either premise, the jury's verdict must stand and the trial court's ruling as to Memorial Hospital must be reversed."* 290 N. E. 2d at 84. (Emphasis added.)

Thus, the critical issue here is whether the trial court's ruling is incorrect on the question of Scott's contributory negligence. It is clear that the Court of Appeals has ignored the rulings of *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 192 N. E. 2d 486, *viz.,* that the trial court's action in granting a new trial is

given a *strong* presumption of correctness. In *Bailey,* the jury returned a negative verdict against the plaintiff at trial. Plaintiff subsequently filed a motion for a new trial, which was sustained by the trial court. The defendant appealed, seeking to overturn the trial court's action.

In affirming the judgment below, the court said:

> "The trial judge is more than a mere umpire; his duties extend beyond the bounds of confining the evidence to the issues and instructing the jury on the law of the case; it was his duty to hear the case along with the jury; he had the opportunity to see and know the jury; he had the duty to observe with witnesses and note the level of their intelligence and wisdom together with their independence or lack of it, their prejudice or lack of it concerning matters about which they testified, and to note their bias or prejudice, their interest or lack of interest. In short, it was *his duty to keep his eyes and ears open to what was going on during the trial* so that when confronted with a motion for a new trial, he could pass upon the purely legal questions involved in the case, as well as determine the weight and sufficiency of the evidence to sustain the verdict. There are many things the trial judge must take in consideration in determining the weight of conflicting evidence and passing upon the question of the preponderance thereof which make his duty in the first instance entirely different from that of an appellate tribunal as a court of review for at the appellate level we have only the record and briefs exemplified by the cold type before us." 135 Ind. App. at 663-664.

Since the decision in *Bailey, supra,* we have adopted our present Rules of Trial Procedure. Trial Rule 59 (E) (7) lends support to the holding in *Bailey* and delineates the functional requirements of the trial court where a new trial is granted:

> ". . . If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. . . ."

The trial judge in the instant case complied with the above rule by setting out his findings of fact. He exercised his

historic duty to insure that the jury system remains a rational process. The trial judge's power is not exercised in derogation to the right to trial by jury. Indeed, he serves as a safeguard of that right by warranting that the jury system does not become a whimsical tool without restraint.

On consideration of the granting of a new trial, the trial judge has an affirmative duty to weigh conflicting evidence. *Novak, Admx.* v. *Chi. & Calumet Dist. Transit Co.* (1956), 235 Ind. 489, 135 N. E. 2d 1. The trial judge sits as a "thirteenth juror" and must determine whether in the minds of reasonable men a contrary verdict should have been reached. *State Farm Life Ins. Co.* v. *Spidel* (1964), 246 Ind. 458, 202 N. E. 2d 886. An appellate court cannot assume the responsibility of weighing conflicting evidence in reviewing the trial judge's action on a motion for a new trial (here a motion to correct error). *State* v. *Bowling* (1970), 253 Ind. 634, 256 N. E. 2d 392. The sole duty of an appellate court is to examine the record to see if:

(a) The trial court abused its judicial discretion;

(b) A flagrant injustice has been done the appellant; or

(c) A very strong case for relief from the trial court's ordering a new trial has been made by the appellant. *Bailey* v. *Kain, supra.* We are committed to the logic expressed nearly one hundred years ago in the landmark case of *Christy* v. *Holmes* (1877), 57 Ind. 314, which logic still stands inescapable today:

"It should always be kept in mind, that the rule which governs a circuit court in deciding a motion for a new trial, upon the ground that the verdict is not sustained by sufficient evidence, is very different from the rule which governs the Supreme Court in deciding the same question, when brought before it by appeal. The circuit court presides over the case, knows with what ability or animus it is prosecuted or defended, has the jury and their conduct before it, sees the witnesses, their looks and manners, hears their statements, and knows whether willingly or reluctantly made; in short, sees the actual trial from its beginning and through-

out its progress to the end, with all the indices (indicia) of truth and falsehood before it, from all of which it may judge the question and decide.

"An appellate court, (tribunal) which is merely a court of error, has nothing of the case before it except the record, in which the words of one witness mean just the same as the same words of another witness; when, perhaps, if the witnesses were seen while they testified, their manner noted, their living voices heard, their intelligence or ignorance of the subject about which they were testifying perceived, one might be entitled to full credit, and the other to not the least. And the living jurors, which come to us merely as so many names, are all before the circuit court, their intelligence or ignorance of the subject they are trying, their conduct or fairness as to the prejudice or independence, and many signs of truth and falsehood which can not possibly be put into a record; and when the question has passed the ordeal of all these tests in the circuit court, and a new trial has been denied, the decision comes before us with so many presumptions in its favor that it is almost impossible to obtain a reversal of the judgment under the judicial rule by which we are bound. If, then, there is any evidence to support the verdict, we can not reverse the judgment, because we must suppose it was that evidence which convinced the jury and the court, and the evidence which contradicted it was not credible, and therefore disregarded.

"It sometimes appears to us that the circuit court ought to have granted a new trial, when we can not judicially reverse the case; and sometimes we fear that the circuit court follows the rule which governs the Supreme Court, instead of the rule which should govern the circuit court.

"In the circuit court, it must clearly appear that substantial justice has been done by the verdict, or a new trial should be granted; in the Supreme Court, it must clearly appear that substantial justice has not been done, or the judgment should be affirmed. If each court will constantly remember the rule of law which governs it, and always put it into practical effect, then substantial justice will be done in every case."

An examination of the record in this case does not disclose that the trial judge abused his discretion in granting a new trial, nor does it appear that a flagrant injustice has been done the defendant hospital, nor has the hospital made a strong case for relief from the trial court's ordering a new

trial. Under these circumstances an appellate court should be reluctant to second guess the trial court's decision.

In weighing the conflicting evidence, the trial court has concluded that the plaintiff, Scott, was not contributorily negligent. The reasons for this conclusion were based upon Scott's physical disabilities and the fact he had no knowledge of the bed pan flushing device and that he had no appreciation or awareness of a danger existing behind the toilet. The Court of Appeals decided as a matter of law that the reasons for granting a new trial were incorrect. The Court of Appeals held that the trial court did not apply the ordinary reasonable man test and, therefore, an inaccurate rule of law was applied in the court below. As enunciated by the Court of Appeals:

> "Therefore, assuming that Scott did not have actual knowledge of the danger, *if it were shown by Memorial Hospital that a reasonable and prudent person in like or similar circumstances would have known and appreciated the danger, then Scott still could have been guilty of contributory negligence. . . .*" 290 N. E. 2d at 84-85. (Emphasis added.)

However, an examination of the record discloses that the trial court was cognizant of the proper test to be applied on the issue of contributory negligence. The trial court tendered the following instructions to the jury on this issue:

> "Contributory negligence is the failure of a plaintiff to use reasonable care to avoid injury to himself which failure is a proximate cause of the injuries for which he seeks to recover.

> "You are instructed that in determining ordinary care of Defendants as to Plaintiff in this case, you may consider the physical and mental ailments of Plaintiff which may have affected his ability to look after his own safety.

> "Similarly, you may consider such physical and mental ailments of Plaintiff in determining his ordinary care on the issue of contributory negligence."

The Court of Appeals cites the test of contributory negligence to be as follows:

"The trial court granted a new trial under Rule TR. 59 (E) of the Indiana Rules of Procedure and stated in substance that the jury's verdict *'is not supported by [any of] the evidence.'* Lack of actual knowledge of the bedpan flusher and lack of actual awareness of the hot water which might flow from it is not a proper test of whether the evidence supports the jury's verdict on Richard E. Scott's contributory negligence. *The test is whether a reasonably prudent person in like or similar circumstances with the exercise of ordinary care would have known or would have been aware of the bedpan flusher and the injury it could inflict if the hot water faucet were turned on."* 290 N. E. 2d at 88-89. (Emphasis added.)

In our opinion the trial court did apply the correct standard when granting the new trial. Further, the Court of Appeals has made an incomplete statement of the law of contributory negligence.

The general rule on the issue of the plaintiff's contributory negligence is that the plaintiff must exercise that degree of care that an ordinary reasonable man would exercise in like or similar circumstances. *Bain, Admx.* v. *Mattmiller* (1938), 213 Ind. 549, 13 N. E. 2d 712. Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, *which falls below the standard to which he is required to conform for his own protection.* Restatement 2d of Torts § 463. Thus, the critical scope of inquiry here is an examination of the standard of care which Scott was required to exhibit. Lack of reasonable care is the factor upon which the presence or absence of negligence depends. *Bixenman* v. *Hall* (1969), 251 Ind. 527, 242 N. E. 2d 837. We hold that a departure from the general rule is required where the plaintiff is suffering from physical infirmities which impair his ability to function as an "ordinary reasonable man." The proper test to be applied in such cases is the test of a reasonable man *under the same disabilities and infirmities* in like circumstances. On the issue of contributory negligence, mental condition and/or physical incapacities are factors to be con-

sidered.[1] *Avery* v. *St. Francis Hospital & School of Nursing, Inc.* (1968), Kan., 442 P. 2d 1013; *Jones* v. *Bailey* (1942), Cal., 122 P. 2d 293; *Keith* v. *Worcester & B. V. St. Ry.* (1907), Mass., 82 N. E. 680.

Dean Prosser has treated negligence with authoritative analysis and lends this discussion:

"As to his physical characteristics, the reasonable man may be said to be identical with the actor. The man who is blind or deaf, or lame, or is otherwise physically disabled, is entitled to live in the world and to have allowance made by others for his disability, and he cannot be required to do the impossible by conforming to physical standards which he cannot met [sic]. Similar allowance has been made for the weaknesses of age and sex. At the same time, the conduct of the handicapped individual must be reasonable in the light of his knowledge of his infirmity, which is treated merely as one of the circumstances under which he acts. A blind man may be negligent in going into a place of known danger, just as one who knows that he is subject to epileptic fits, or is about to fall asleep, may be negligent in driving a car. It is sometimes said that a blind man must use a greater degree of care than one who can see; but it is now generally agreed that as a fixed rule this is inaccurate, and that the correct statement is merely that he must take the precautions, be they more or less, which the ordinary reasonable man would take if he were blind. In theory the standard remains the same, but it is sufficiently flexible to take his physical defects into account." Prosser, *Law of Torts,* p. 151-152 (4th ed., 1971).

As stated by the Florida Court of Appeals:

"It is elementary that contributory negligence is the failure of a person to exercise for his own safety that degree of

---

1. There is abundant case law authority supporting the proposition that physical infirmities are factors to be considered on the issue of contributory negligence: Millsaps v. Brogdon (1911), 97 Ark. 469, 134 S. W. 632 (cripple); Armstrong v. Day (1930), 103 Cal. App. 465, 284 P. 1083 (blind in one eye); Tomey v. Dyson (1946), 76 Cal. App. 2d 212, 172 P. 2d 739 (impaired hearing); Kerin v. Baccei (1939), 125 Conn. 335, 5 A. 2d 876 (defective vision); Crawley v. Jermain (1920), 218 Ill. App. 51 (defective vision and hearing); Deshazer v. Cheatham (1930), 233 Ky. 59, 24 S. W. 2d 936 (old age); Wilson v. Freeman (1930), 271 Mass. 438, 171 N. E. 469 (deaf); Heger v. Meissner (1954), 340 Mich. 586, 66 N. W. 2d 220 (cripple); Mackie v. McGraw (1948), 183 Or. 204, 191 P. 2d 403 (defective hearing); Brunner v. John (1954), 45 Wash. 2d 341, 274 P. 2d 581 (cripple).

care and caution which an ordinary reasonable and prudent person in a similar situation would exercise.

"In determining whether a particular individual has been guilty of contributory negligence at a particular time, it is necessary to consider (1) the characteristics of that individual—age, intelligence, experience, knowledge, physical condition, etc.—which would affect his ability to detect dangerous conditions or appreciate the degree of hazards involved in conditions actually observed; (2) the physical facts—the extent to which the particular hazard is noticeably called for by surrounding circumstances; and (3) the action taking place—the incidents of movement, sound and physical activities of the individual charged with contributory negligence and other persons and objects, animate and inanimate.

"It is the action of the individual in the light of all the foregoing facts which determines whether or not he has been guilty of contributory negligence.

\* \* \*

"We think the rule is this: It is the duty of every person to exercise his individual faculties, physical and mental, to detect and avoid hazards to that degree that an ordinary and reasonable person having the same physical and mental abilities would exercise such faculties under the same circumstances, taking into account the time, place, physical surroundings, and activities being pursued." *Isenberg* v. *Ortona Park Recreational Center, Inc.* (Fla. App. 1964), 160 So. 2d 132, 134-136.

And put another way by the Supreme Court of Errors of Connecticut:

" 'While the standard of care to be used [reasonable care] is an external standard taking no account of the personal equation of the man concerned, yet the amount of care required depends upon the circumstances of the particular case, and if a person suffers from a physical disability increasing the risk of harm to him that is among the circumstances to be considered.' Muse v. Page, 125 Conn. 219, 223, 4 A. 2d 329, 331. Thus reasonable care in the case of one lacking normal co-ordination or obliged to use crutches is that amount of care which an ordinarily prudent person, similarly lacking in co-ordination or required to use crutches, would exercise under the same circumstances." *Goodman* v. *Norwalk Jewish Center, Inc.* (Conn. 1958), 139 A. 2d 812, 815.

In a California negligence case, the trial court had instructed the jury that one "whose faculties are impaired is required to use a greater amount of caution than one who does not suffer from any such disability." On appeal, the California Court of Appeals affirmed the granting of a new trial and said:

> "Instruction (d), supra, is not a correct statement of the law as to the quantum of care required of one whose faculties are impaired. Such person is bound to use that care which a person of ordinary prudence with faculties so impaired would use in the same circumstances. . . . This instruction, as requested by defendants and as given by the court, imposed upon the plaintiff a quantum of care which was not required of her. . . . Taken together, the trial court, upon the hearing of the motion for new trial, was justified in arriving at the conclusion that error in the instructions was prejudicial to the plaintiff's case." *Conjorsky* v. *Murray* (Cal. App. 1955), 287 P. 2d 505, 508.

The Supreme Court of New Hampshire in *Perry* v. *Fredette* (N. H. 1970), 261 A. 2d 431, emphasized that the "standard of care applied to children and persons with physical disabilities is more flexible than that applied to the adult without disabilities." 261 A. 2d at 432.

The Appellate Court of Indiana spoke to the question of physical infirmities affecting contributory negligence in 1909:

> "A blind man walking upon the highway is bound to use ordinary care only, in determining which the jury should consider the blindness, other infirmities, and all circumstances bearing upon the question as to what care was reasonably necessary to insure his safety." *Apperson* v. *Lazro* (1909), 44 Ind. App. 186, 192, 88 N. E. 99.

As the rule is stated in C. J. S.:

> "A person laboring under any physical disability increasing his liability to injury must nevertheless exercise ordinary care to avoid injury, and if he fails to exercise that degree of care, and such failure contributes proximately to cause his injury, he is guilty of contributory negligence. Such a person is not required to exercise a higher degree of care to that end than is required of a person under no disability; ordinary care is all that is required.

"However, in determining whether such a person exercised ordinary care for his own safety, his disability is a circumstance to be considered. Thus, while it has been said that ordinary care is such care as an ordinarily prudent person with the same disability would exercise under the same or similar circumstances, it has also been held that it may be incumbent on one with a physical disability to put forth a greater degree of effort than would otherwise be necessary in order to attain that standard of care which is required of everyone." C. J. S., *Negligence,* § 142.

The Court of Appeals has extracted the general rule as to contributory negligence, but has not taken into account the facts and circumstances of the instant case. The correct test to be applied in determining Scott's standard of care is the test of a reasonbly prudent man suffering from the same maladies and disabilities under like circumstances as those here.

In the instant case, the trial judge has exercised his affirmative duty to weigh conflicting evidence. He has determined that the hospital was guilty of negligence and that Scott was free from contributory negligence. These are his findings of fact which should not be disturbed on the appellate level. We are committed to support his judgment here.

The plaintiff herein is also asserting a claim of malpractice against the attending physicians, Drs. Mason and Keenan. We find no merit to the alleged malpractice claims. At the close of all the evidence, the trial court granted Dr. Mason's motion for judgment on the evidence. The plaintiff alleges error here in that under proper orders from Dr. Mason, he would have had supervision which would have avoided the accident. However, an examination of the record reveals no evidence from which an inference can be drawn that had a different order been given, Scott would be accompanied to the toilet by a nurse or attendant. Nor is there a showing of what type of order would have mandated such supervision. We find no error upon this issue.

The plaintiff Scott contends that it was error for the trial

court to submit to the jury the issue of Scott's contributory negligence as it bears on the liability of Dr. Keenan. The issue of contributory negligence was submitted to the jury without objection, and without a motion to withdraw the same. Therefore, the question is not properly before us on appeal.

For all of the foregoing reasons, transfer of this cause is granted and the judgment of the trial court is hereby affirmed.

Judgment affirmed.

Arterburn, C.J., Givan and Prentice, JJ., concur; DeBruler, J., concurs with statement to follow.

### CONCURRING OPINION

DEBRULER, J.—In this case, I vote to grant transfer and to remand the case to Judge Kopec with instructions to vacate his grant of a new trial and to reconsider the motion to correct errors. He should be instructed to apply the standard of contributory negligence enunciated in the majority opinion, and to make a new ruling on such motion to correct errors. Such new ruling should also be supported by new findings in support of granting the new trial, if that should be his new ruling.

NOTE.—Reported in 300 N. E. 2d 50.