Travis D. GARRISON, Appellant–Plaintiff,

v.

Charles E. METCALF, Appellee–Defendant.

No. 10A01–0409–CV–402.

Court of Appeals of Indiana.

June 9, 2005.

Nicholas F. Stein, Stephen H. Meyer, Bernadette D. Latuch, Law Office of Nicholas Stein, New Albany, for Appellant.

Kenneth G. Doane, Jr., George A. Budd V, Ward, Tyler & Scott, LLC, New Albany, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Travis D. Garrison appeals the order of the trial court granting the motion to correct error of Charles E. Metcalf and ordering a new trial in the negligence action brought by Garrison against Metcalf.

We affirm.

### ISSUES

1. Whether Indiana Trial Rule 53.3 renders the trial court's order a nullity, resulting in the reinstatement of the jury verdict in Garrison's favor.
2. Whether the trial court committed reversible error when it ordered a new trial.

### FACTS

On the night of February 23, 2003, on the shoulder between Jerry's Restaurant

and East Tenth Street in Jeffersonville, there was a collision between Metcalf's white Grand Cherokee SUV and Garrison's bicycle. Garrison suffered a serious head injury. On May 15, 2003, Garrison brought a negligence action against Metcalf. The case was tried to a jury on April 13–14, 2004. On April 14, 2004, the jury returned a verdict finding that Metcalf and Garrison were each 50% at fault, Garrison's damages were in the amount of $106,000, and Garrison should be awarded $53,000. On April 16, 2004, the trial court reduced the verdict to judgment.

On April 20, 2004, Metcalf filed a motion to correct error, requesting "pursuant to Rules 50 and 59 of the Indiana Rules of Trial Procedure" that the trial court grant either "judgment notwithstanding the verdict or, in the alternative, . . . a new trial." (Garrison's App. 28). On June 28, 2004, the trial court held a hearing on the matter. At the conclusion, Metcalf was directed to file proposed findings of fact and conclusions of law by July 9, 2004; "to file a response," Garrison had until July 23. (Tr. 289).

Thirty-six days from the date of the hearing, on August 3, 2004, the trial court issued its order granting Metcalf's motion to correct error and ordering a new trial. On August 10th, Garrison filed a motion for a change of judge. On August 13th, the motion was granted. On August 17th, Garrison's counsel signed a joint motion for the appointment of a special judge, upon which an agreed order was entered. On August 31st, Garrison filed his notice of appeal.

### DECISION

1. *Validity of Order Granting Motion to Correct Error* . .

■ Garrison first argues that Metcalf's motion to correct error was "deemed de-nied" pursuant to Indiana Trial Rule 53.3; therefore, the trial court's "subsequent order granting his motion and ordering a new trial is null and void." Garrison's Br. at 8. We disagree.

Indiana Trial Rule 53.3(A) provides that if the trial court "fails to rule" on a motion to correct error within thirty days of the hearing on the motion, the motion "shall be deemed denied." As our supreme court explained in *Cavinder Elevators, Inc. v. Hall,* 726 N.E.2d 285, 286 (Ind.2000), "On rare occasion, . . . a trial court may initially fail to rule timely on a motion to correct error but later, after the moving party timely files a praecipe to initiate an appeal from the deemed denial, the court may belatedly grant the motion." In *Cavinder,* the defendant filed a motion for summary judgment, which was granted. The plaintiff then filed a motion to correct error challenging the grant of summary judgment based on a claim of newly discovered evidence. When the trial court failed to rule on the plaintiff's motion within thirty days, the plaintiff timely filed a praecipe to appeal. Thereafter, some thirty-six days *after* the "deemed denial" date, the trial court granted plaintiff's motion and set aside the grant of summary judgment. "Having obtained the relief sought," the plaintiff dropped his appeal. *Id.* at 287. The question arose whether defendant could then appeal the belated ruling. Our supreme court noted that the party opposing a motion to correct error could "accept" the belated grant of that motion or appeal. *Id.* at 288. The court held that the belated grant of a motion to correct error was "not necessarily a nullity," and it stated that the belated ruling could be "voidable and subject to enforcement of the 'deemed denied' provision" if "the party opposing the motion to correct error promptly appeals." *Id.* at 288.

We recognize that the parties here are not in the same procedural posture, *i.e.*, it was the defendant's motion to correct error that was granted in the belated ruling, and the plaintiff—"the party opposing the motion to correct error"—who now seeks to have that ruling found invalid. *Id.* Other factual distinctions are also noteworthy in light of Garrison's insistence that *Cavinder* requires Metcalf to have timely filed an appeal. Garrison's Reply at 5. First, the trial court's ruling in this case was *six days* late, rather than thirty-six days as in *Cavinder*. Thus, Metcalf would have had to file a notice of appeal within those six days (two of which were weekend days) in order to initiate an appeal of the deemed denial. Given the thirty-day period provided for a party to consider the merits of pursuing an appeal, *see* Ind. Appellate Rule 9(A), we do not read *Cavinder* to impose this more restrictive limitation requiring Metcalf to file a praecipe during those six days. Second, Garrison's actions immediately after the trial court's August 3, 2004 order were to move for a new judge and subsequently agreeing to the appointment of a special judge. Such actions reasonably led to the inference that Garrison had decided to "accept" the belated ruling as valid. 726 N.E.2d at 288. Thus, Metcalf was in the position of not being "required to perfect and pursue an apparently unnecessary appeal of a claim already determined to be meritorious by the trial court." *Id.*

Garrison also directs us to *Jackson v. Paris*, 598 N.E.2d 1106 (Ind.Ct.App.1992), *trans. denied*, as follows:

If a judge does not rule on a motion to correct error within the prescribed limit of Ind. Trial Rule 53.3, the motion is deemed denied by operation of law. This "lazy judge" rule is self-activating upon the passage of the requisite number of days. Here, the motion to correct error was deemed denied on June 21, 1991 when the trial court failed to rule on the motion. The trial court's power to rule on the motion thereafter was extinguished and its subsequent ruling is a nullity.

*Id.* at 1107 (citations omitted). We believe the dispositive nature of the *Jackson* statement must be tempered by our supreme court's more recent discussion in *Cavinder*. As already quoted, *Cavinder* observed that a trial court "may initially fail to rule timely on a motion to correct error but later ... belatedly grant the motion." 726 N.E.2d at 287. The court further declared that "[w]hen a trial court considers and grants a motion to correct error, even if done belatedly, we perceive that such a decision will typically be correct on the merits ...." *Id.* at 288. Finally, the court cautioned that *Cavinder* did "not create an open-ended time in which the trial court may rule." *Id.* at 288–89. Our reading of *Cavinder* leads us to conclude that it implicitly overrules the bright-line statement of *Jackson* to the effect that a belated ruling on a motion to correct error is *per se* invalid.

We find the overarching concern expressed in *Cavinder* to be that overly strict application of Rule 53.3(A) should not leave a party without access to an appeal under the circumstances of the particular case. Here, Garrison clearly has the ability to argue on appeal that the trial court erred when it granted Metcalf's motion and ordered a new trial, and Metcalf may argue the correctness of that ruling. Based upon the circumstances before us, we do not find the fact that the trial court's order on the motion to correct error was six days late renders it invalid.

### 2. *Order for a New Trial*

As noted in the trial court's order, Justice Hunter quoted the following description of the trial court's duty:

The trial judge is more than a mere umpire; his duties extend beyond the bounds of confining evidence to the issues and instructing the jury on the law of the case; it was his duty to hear the case along with the jury; he had the opportunity to see and know the jury; he had the duty to observe the witnesses and note the level of their intelligence and wisdom together with their independence or lack of it, their prejudice or lack of it concerning matters about which they testified, and to note their bias or prejudice, their interest or lack of interest. In short it was *his duty to keep his eyes and ears open to what was going on during the trial* so that when confronted with a motion for a new trial, he could pass upon the purely legal questions involved in the case, as well as determine the weight and sufficiency of the evidence to sustain the verdict.

*Memorial Hosp. of South Bend v. Scott,* 261 Ind. 27, 300 N.E.2d 50, 53–54 (1973) (quoting *Bailey v. Kain,* 135 Ind.App. 657, 192 N.E.2d 486, 488–89 (1963), emphasis in *Scott*). Thus, when faced with a motion for a new trial,

the trial judge has an affirmative duty to weigh conflicting evidence. The trial judge sits as a 'thirteenth juror' and must determine whether in the minds of reasonable men a contrary verdict should have been reached.

*Scott,* 300 N.E.2d at 54 (citations omitted).

After the trial court grants a new trial, as we explained in *Precision Screen Machines, Inc. v. Hixson,* 711 N.E.2d 68, 70 (Ind.Ct.App.1999), our appellate review proceeds as follows:

... this court neither weighs the evidence nor judges the credibility of the witnesses. The sole duty of an appellate court is to examine the record to see if: (a) the trial court abused its judicial discretion; (b) a flagrant injustice has

been done the appellant; or (c) a very strong case for relief from the trial court's ordering a new trial has been made by the appellant. In applying this review standard, the trial court's action in granting a new trial is given a strong presumption of correctness. The trial court has broad discretion to grant or deny a motion for a new trial and that determination will be reversed only for an abuse of discretion. An abuse of discretion will be found when the trial court's action is against the logic and effect of facts and circumstances before it and the inferences which may be drawn therefrom.

*Id.* (citations omitted). Therefore, "it is our duty to affirm unless it is clearly demonstrated" by Garrison that the trial court abused its discretion. *Id.*

Garrison argues that the trial court failed to comply with Trial Rule 59(J)(7), which states that when a new trial is granted because the verdict does "not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted." Ind. Trial R. 59(J)(7). Further, such finding "shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence." *Id.* If the decision "is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted." *Id.* However, "if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence." *Id.*

Garrison argues that the trial court committed reversible error when it did not expressly state that it ordered a new trial because the verdict was against the weight

of the evidence,[1] and when it failed follow the Rule's requirement to "set out the supporting and opposing evidence." *Id.* We cannot agree.

The trial court's order initially notes that the accident occurred late on a winter evening and then finds a series of facts to have been established by undisputed evidence:

- At the accident site, Metcalf was turning right (east) onto Tenth Street, on which there were two lanes for eastbound traffic and an adjoining shoulder.
- Garrison was riding his bicycle west, on the wrong side of the roadway, on the shoulder.
- Garrison wore dark-colored clothing.
- Garrison was riding a bicycle without lamps, as required by statute, on the front of the bicycle.
- Hospital tests immediately after the accident showed Garrison's blood-alcohol content was .19% and positive for marijuana.
- Garrison testified that he did not remember drinking that day, but admitted that it had been his day off and that he usually drank on his day off; he testified that he did not remember smoking marijuana that day but that smoking marijuana was something he did on his day off.
- Garrison testified that he had no memory of the accident but also testified that he did not see any cars moving from the Jerry's parking lot and that although there was nothing between his position and where Metcalf's vehicle was, he did not see the Grand Cherokee at the exit.

- Metcalf's vehicle was a white Grand Cherokee SUV.
- Metcalf stopped at the exit and looked to his left for oncoming traffic. When he released his foot from the brake, the bicycle and SUV made contact at or near the right front corner of the vehicle.
- Metcalf did not look to his right at the exit.
- Metcalf was not distracted by anything inside his vehicle at the time of the accident.

The trial court's order next summarizes testimony of the eyewitness, Mr. Maples, to the effect that there was "no real reason for [Metcalf] to look to his right at the accident location and no testimony that if he did so, he would have been able to see" Garrison's "unlit and unmarked" bicycle "and/or avoided the impact" with Garrison's bicycle. (Garrison's App. 13). The trial court found the evidence led to the conclusion that Garrison "was drinking and smoking marijuana" on that day, and testimony by the emergency room physician and EMT responder indicated that the alcohol/drug combination "would have intensified" the impairment of Garrison's "coordination, vision and ability to respond to developing circumstances." *Id.* at 14. Finally, the trial court found that during deliberations, the jury had propounded a question asking whether they could apportion more than 50% fault to Garrison and then proceed to calculate his damages on subsequent verdict forms, and that the trial court had advised the jury that if they

---

1. Garrison also argues that because the trial court's order states that the verdict "is clearly erroneous and contrary to the evidence and this court could enter judgment for the defendant," this implies "a determination that the verdict was 'clearly erroneous'" pursuant to T.R. 50. Garrison's Br. at 10. The statement is that the court "could" have done something other than order a new trial. But *what it did* was to order a new trial. Therefore, we address Garrison's arguments as to why that decision was error.

found Garrison more than 50% at fault for the accident, "the case was over and no damages could be awarded."[2] *Id.*

After these findings, the trial court's order discusses the trial judge's "affirmative duty to weigh conflicting evidence and ... test the credibility of witnesses" and his role "as the 'thirteenth juror' in assessing whether clearly ... substantial justice has been done by the verdict," citing *Scott,* 300 N.E.2d at 54. The order then declares that when "a verdict is against the weight of the evidence, it is the trial court's duty to grant a new trial," and concludes that "as the thirteen[th] juror, substantial justice was not done by the verdict in this case." *Id.* at 15. Specifically, the trial court observed that the jury's apportionment of liability was contrary to the evidence because Garrison's failure to

- see Metcalf's vehicle,
- "operate the bicycle on the correct side of the road,"
- "operate a bicycle correctly suited for night-time operation," and
- "refrain from operating a bicycle in a severely intoxicated state

far outweigh[ed] [Metcalf]'s fault, if any for failing to look right, especially when, as in this case, there was no practical reason to look right and no evidence that [Garrison] would have been visible in dark clothing on an unlit bicycle." *Id.* at 16. The trial court concluded that in "the minds of reasonable men, a contrary verdict should have been reached." *Id.* at 16; *Scott,* 300 N.E.2d at 54. Finally, the trial court stated that Garrison's contention that Metcalf's

failure to look right was fifty percent of the fault for the accident is not legally or factually supported by the events of the trial in this matter, especially in the complete absence of evidence indicating that having done so would have led to the discovery of [Garrison]'s bicycle or prevention of the accident.

*Id.*

The trial court's order repeatedly cites the authority of *Scott,* and it applies its reasoning. Hence, the trial court's determination was that a new trial should be ordered because the verdict was against the weight of the evidence. Further, we find the trial court's order to have adequately "set out the supporting and opposing evidence" as to the respective liability of Garrison and Metcalf, as required. T.R. 59(J)(7). Garrison has failed to demonstrate that the trial court abused its discretion when it ordered a new trial. *Hixson,* 711 N.E.2d at 71.

Affirmed.

MAY, J., and BARNES, J., concur.

---

2. The verdict forms given the jury consisted of Step 1, to find the defendant without fault *or* "move to Step 2"; Step 2, to find the plaintiff's fault more than 50% of the total fault *or* finding the plaintiff's fault was 50% or less of the total fault and moving "to Step 3"; Step 3, to assess the respective fault of plaintiff and defendant in percentages that total 100%; and Step 4, to find the total damages and determine the verdict by multiplying the percentage of the defendant's fault times the total damages. Garrison's App. 18, 19.