RUCKER, J.,
dissenting.
I agree with the majority that "a hospital's duty of care to a patient who presents observable signs of domestic abuse includes some reasonable measures to address the patient's risk." Op. at 910. Although the existence of duty is a matter of law for the courts to decide, a breach of duty is usually a matter left to the trier of fact. King v. Northeast Security, Inc., 790 N.E.2d 474, 484 (Ind.2003). Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred. Id. Unlike the majority however I do not believe the question of breach in this case can be determined as a matter of law.
The record establishes a lack of communication about suspected domestic abuse between the ER staff and the treating emergency room physician. Although the triage nurse indicated she informed a charge nurse of her suspicions, the record is void of any evidence of an emergency room charge nurse taking any action or informing the treating physician. Appellant's App. at 223-28. The fact that the attending physician states that he was not informed of the suspected domestic abuse indicates that the emergency room support staff did not follow the hospital's adopted domestic violence policies, which requires such communication from staff to the treating physician. Id. at 914-22. This concern is amplified because the attending physician was able to spend time alone with Malia before she was heavily medicated and while the "husband" was out of the exam room. Id. at 890. Thus the doctor, had he been properly informed, could have asked appropriate questions regarding domestic abuse during that period, which could have given the patient a reasonable opportunity to seek refuge.
In sum, the facts in this case raise genuine issues as to whether the hospital breached its duty of care by, among other things, discharging a patient to the custody of a suspected abuser. This is not a matter that can be resolved by summary disposition.
I also disagree with the majority's determination that Malia was contributorily negligent as a matter of law. It is of course the case that in a contributory negligence regime any negligence on the part of the plaintiff, no matter how slight, will bar any action for damages. But contributory negligence is generally a question of fact that is not appropriate for summary judgment if there are conflicting factual inferences to be drawn from the designated evidence. Jones v. Gleim, 468 N.E.2d 205, 207 (Ind.1984). As the majority correctly declares "the question of contributory negligence is a question of law for the court when only one reasonable inference or conclusion can be drawn from the evidence." Op. at 911. In this case the majority apparently is of the view that because there was evidence that Malia was "alert and oriented" during her period of recovery, "very aware [of] what was going on" and was "capable of making her own decisions," op. at 911, she was negligent in some degree and thus the trial court properly granted summary judgment in favor of the Hospital. But summary judgment *913 is rarely appropriate in negligence actions. Rhodes v. Wright, 805 N.E.2d 382, 387 (Ind.2004). And this is so because "negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person-one best applied by a jury after hearing all of the evidence." Id.
The medical records indicate that, while Malia was present in the emergency room, she received numerous drugs, including Phenergan and the narcotic analgesic Dilaudid to control her pain. Appellant's App. at 285. It was determined that Malia required general surgery to repair her injuries, which was done in an operating room under general anesthesia, with full intubation. Id. at 290, 304. Malia was rendered medically unconscious for over one hour and then given numerous medications, one of which was 10 milligrams of morphine (a narcotic analgesic) for postoperative pain. Id. at 298, 301. Although the record indicates that Malia was thereafter alert and oriented, it is unclear what her true decision-making capabilities and mental state were at the time of discharge. Id. at 308. Furthermore, from the record before us it appears that Malia was discharged from the hospital approximately 90 minutes after the surgery was completed, which leaves open the likelihood that the she had not fully recovered from the general anesthesia and was thus mentally and/or physically incapable of reasonable decision making, or self-protection, when allowed to leave the hospital. Id.
This Court has held:
The general rule on the issue of the plaintiff's contributory negligence is that the plaintiff must exercise that degree of care that an ordinary reasonable [person] would exercise in like or similar cireumstances.... We hold that a departure from the general rule is required where the plaintiff is suffering from physical infirmities which impair [her] ability to function as an "ordinary reasonable [person]." The proper test to be applied in such cases is the test of a reasonable [person] under the same disabilities and infirmities in like circumstances. On the issue of contributory negligence, mental condition and/or physical incapacities are factors to be considered.
Mem'l Hosp. of South Bend, Inc. v. Scott, 261 Ind. 27, 300 N.E.2d 50, 56 (1973) (internal citations omitted). It is clear to me there are different factual inferences that may be drawn from the evidence concerning Malia's mental, emotional, and physical condition. Thus, a fact-finder should determine whether having received general anesthetic, a relaxant, numerous doses of various opiates for pain, and being advised by Hospital not to make any important decisions, Malia was exercising that degree of care that a reasonable person under the same or similar condition would have been expected to exercise when she decided to leave the hospital with her former husband. This is not in my view a matter that can be disposed of by summary disposition. For the foregoing reasons I respectfully dissent and would reverse the judgment of the trial court.
DICKSON, J., joins.