# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2020, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeremy J. Grogg
Jared P. Baker
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Patrick J. Murphy
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

M&S Steel Corp.,
*Appellant-Defendant,*

v.

Wendell H. Kemplen,
*Appellee-Plaintiff.*

February 28, 2020

Court of Appeals Case No.
19A-PL-1663

Appeal from the Allen Superior Court

The Honorable Craig J. Bobay, Judge

Trial Court Cause No.
02D02-1707-PL-238

**Tavitas, Judge.**

## Case Summary

M&S Steel Corp. ("M&S Steel") appeals the trial court's denial of its motion to correct error following a jury trial in which the jury found in favor of Wendell Kemplen. We affirm.

## Issues

M&S Steel raises two issues for our review, which we revise and restate as:

I. Whether the trial court erred in allowing improper impeachment evidence.

II. Whether the trial court properly denied M&S Steel's motion to correct error pursuant to Indiana Trial Rule 59(J).

## Facts

On July 1, 2016, Walter Fuller, who has an ownership interest in M&S Steel, was driving a 2016 Tesla vehicle, which Yoder-Fuller Ford, another business Fuller has an ownership interest in,[1] leased to M&S Steel. In Fort Wayne, Fuller claimed he turned from Clinton Street onto Parnell Avenue. Fuller was travelling in the right lane of Parnell Avenue, and Connie Carrigan was travelling in the "backed-up" left lane of Parnell Avenue, both heading South. *Id.* at 86. Carrigan testified that, after the turn from Clinton Street onto Parnell

---

[1] Based on the record, it appears that Yoder has a majority ownership interest in Yoder-Fuller Ford, whereas M&S Steel is "basically [Fuller]." Tr. Vol. I p. 42.

Avenue, "it kind of goes uphill and curves a bit" and that she could not see that intersection in her rear view or side view mirror. Tr. Vol. I p. 89.

[4] According to Carrigan, she attempted to change from the left lane to the right lane; Carrigan looked in both her rearview mirror and side mirror, turned her head, had her signal on, and did not see any cars coming in the right hand lane, so she began changing lanes. Suddenly, Carrigan heard a collision and realized the front of her vehicle had collided with the back of Fuller's vehicle.

[5] Seconds later, Kemplen was travelling North on Parnell Avenue in the opposite direction of Carrigan and Fuller and attempted to make a left turn onto a cross street, East California Road, across the lanes Fuller's and Carrigan's vehicles were travelling. Kemplen noticed that the inside lane—the left hand lane Carrigan was originally in—was backed up with cars with the exception of a "gap there [at] the intersection for anybody to cross over," and the outside lane—where Fuller was traveling "was clear." *Id.* at 142. A driver in the left hand lane "motioned [Kemplen] to give [him] the right of way to go on and pull in front of" that driver onto East California Road. *Id.* Kemplen, a former truck driver, stated he "proceeded slowly to be able to look around the vehicle to make sure everything was clear" before crossing both lanes of traffic. *Id.* Kemplen "got two-thirds of the way over" the right hand lane and then suddenly saw Fuller's vehicle coming at him.

[6] Kemplen and Fuller collided, and the front, right side of Fuller's vehicle hit the back of Kemplen's vehicle. Fuller stated he turned his wheel left to attempt to

avoid the collision with Kemplen.  Data from Fuller's vehicle indicated that Fuller sped up from 35.9 miles per hour to 39.5 miles per hour immediately prior to the crash with Kemplen, and after he was struck by Carrigan's vehicle; Fuller then applied the brakes at the time of the crash with Kemplen.  Fuller, however, was unable to avoid the collision.  Kemplen, similarly, tried to avoid the collision by pressing the gas as quickly as possible to try and get across both lanes of traffic.

[7]     Sergeant Lynn Armstrong, with the Purdue Fort Wayne University Police Department, responded to the site of the collisions.  Sergeant Armstrong's report concluded that none of the vehicles was travelling at an "excessive" speed.  *Id.* at 99.  Fuller had the vehicle towed, and M&S Steel rented another vehicle for Fuller to drive.  Sergeant Armstrong depicted the accident in a diagram, which Kemplen introduced as Defendant's Exhibit C.  *See* Figure 1.



Official copy obtained through BuyCrash

Figure 1

On July 18, 2017, M&S Steel filed a complaint for damages, alleging negligence against Carrigan and Kemplen. M&S Steel sought damages for the rental vehicle Fuller drove while the Tesla was being repaired and for diminution in value of the Tesla as a result of the collisions; the lease agreement between M&S Steel and Yoder-Fuller Ford required M&S Steel to reimburse Yoder-Fuller Ford for any diminution in value of the vehicle. On July 30, 2018, the parties filed a stipulation for dismissal with prejudice as to Carrigan, which the trial court granted on August 20, 2018.

[9] The trial court held a jury trial on February 25 and 26, 2019. During the trial, Kemplen's counsel cross-examined Fuller and asked Fuller several questions regarding certain portions of Fuller's deposition testimony. M&S Steel's attorney objected and argued that Kemplen's counsel was improperly impeaching Fuller by arguing the questions were "an ongoing attempt at impeachment, without any actual questions or contradictory statements being made." *Id.* at 65-66. Kemplen's counsel argued his questions were "precisely what [Indiana] Trial Rule 32 permits." *Id.* at 66. The trial court overruled M&S Steel's objection. Kemplen's counsel continued to cross-examine Fuller regarding his deposition statements both after Fuller made inconsistent statements and at other times to highlight Fuller's deposition statements during the trial that were not inconsistent statements. After Fuller's cross-examination, outside of the presence of the jury, M&S Steel's attorney again objected to Kemplen's counsel's method of impeachment. The trial court acknowledged that it should have sustained M&S Steel's counsel's objection. The trial court then engaged in the following colloquy with M&S Steel's counsel:

> THE COURT: The Court's prior ruling was based on apparently it's [sic] misunderstanding that the deposition at issue with Mr. Fuller was a[n Indiana Trial Rule] 30(b)(6) deposition. [M&S Steel's Counsel], what else would you like to add at this point?
>
> [M&S Steel's Counsel]: Judge, I guess I would ask for the Court's guidance in what it think[s] would be the most appropriate way to handle this, whether that it just – I don't know that an instruction would be useful or not.

\* \* \* \* \*

[M&S Steel's Counsel]: I suppose if the objection is preserved and that's where it's at and whether there's any issue with the procedure I don't know. I don't know. But I would accept the Court's guidance on any manner in which to handle – and I think it's handled, I guess.

\* \* \* \* \*

THE COURT: I don't think it would do any good to go back and attempt to bring that to the light of the jury except for me to tell them that you were right and Mr. Murphy and I were wrong.

[M&S Steel's Counsel]: While I'm a very proud man, Judge, I'm not going to make that request.

THE COURT: Because really it didn't do any damage and I – the Appellate Rules looking – or the Appellate decisions looking at use of impeachment never find that to be – it's always harmless error. I don't think there was any harm here. It's just a learning experience for us all. Is that good enough?

[M&S Steel's Counsel]: Very good.

Tr. Vol. I pp. 80-83.

[10]     At the trial, Sergeant Armstrong opined that the collision occurred due to Kemplen's "failure to yield during the left turn." *Id.* at 99. Kemplen agreed, when asked on cross-examination, that "had [he] not made that turn onto California [street] that [the] collision would have never occurred[.]" *Id.* at 145.

Scott Jarvis, an independent agent with the Auto Appraisal Group, testified that the diminished value of the Tesla was $25,250.00. At the close of evidence, the jury returned a verdict for Kemplen.

On March 1, 2019, M&S Steel filed a motion for judgment on the evidence pursuant to Indiana Trial Rule 50(A)(4) and a motion to correct error pursuant to Indiana Trial Rule 59(J). The trial court held a hearing on April 4, 2019, and took the motions under advisement. On June 20, 2019, the trial court issued a written order denying M&S Steel's motions. M&S Steel now appeals.

## Analysis

### I.    *Impeachment Testimony*

M&S Steel argues that the trial court erred by allowing improper impeachment of Fuller. According to M&S Steel, although the trial court later recognized that it erred by allowing the improper use of Fuller's deposition, the trial court also concluded there was "no harm as a result of the improper impeachment," and thus, no cure was necessary. Appellant's Br. p. 20. M&S Steel argues that it did suffer prejudicial harm as a result of the improper impeachment as "evidenced by the tenor of the trial court's order which effectively rested on the trial court's observation that Mr. Fuller was not to be believed." *Id.*

A trial court's ruling on the admission or exclusion of evidence is reviewed for an abuse of discretion. *See Carlson v. Warren,* 878 N.E.2d 844, 847 (Ind. Ct. App. 2007). "Only when the decision is clearly against the logic and effect of the facts and circumstances will we reverse." *Id.* (citations omitted). "[I]t is

well established that errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *M.R. v. B.C.,* 120 N.E.3d 220, 225 (Ind. Ct. App. 2019) (citations omitted); *see also* Ind. Tr. R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

[14]     Indiana Rule of Evidence 613(b) provides the procedure for impeachment: "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." The trial court recognized that its ruling was erroneous, due to the form of the questioning, under Indiana Trial Rule 32, which allows the use of depositions so long as the use complies with the Indiana Rules of Evidence.[2] As outlined in *Carroll v. State,* 338 N.E.2d 264, 271 (Ind. 1975):

> The trial tactic of impeachment by prior inconsistent statement is multi-staged. First, the necessary foundation must be laid. Second, the impeaching statement is read to the witness. Finally,

---

[2] Indiana Trial Rule 32 states, in relevant part:

   **(A) Use of depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition**, so far as admissible under the Rules of Evidence** applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition, by or against any party who had reasonable notice thereof or by any party in whose favor it was given in accordance with any one [1] of the following provisions:

   > (1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.

(emphasis added).

at some further point in the proceedings, the witness may explain the statement or, in the alternative, present evidence of prior consistent statements.

[15] Regardless, any error is harmless. Importantly, Fuller does not argue that the information itself was not admissible, but instead, argues that reading the deposition statements was an improper method of impeachment. In closing argument, Kemplen's counsel addressed many potential issues with Fuller's testimony, namely, that: (1) it is likely Fuller was not entirely paying attention to the road, as Fuller claims, after Carrigan hit Fuller's vehicle; (2) Fuller was inconsistent on the damages he was requesting; and (3) the diminished value is not yet owed to Yoder-Fuller Ford.[3]

[16] The trial court found:

> Having observed the conduct and testimony of the parties and witnesses at trial, the Court can see that Fuller may not have favorably impressed the jury, and in its proper role of weighing

---

[3] While some of this evidence came out during Fuller's cross-examination, the jury also had the lease agreement available to it. The lease agreement required:

> Vehicle to be in good and proper mechanical condition at end of lease. Vehicle to be in proper physical appearance less normal wear and tires are to be in good condition and a match set. . . . In the event of any damage, destruction, abuse, excessive wear and/or excessive mileage and use, any sums paid by the Customer to the Dealer in connection with any sale or lease may, at the option of the Dealer, be applied to the extent necessary to fully compensate the dealer for any excessive mileage and to pay the cost of any repairs or any diminution in value of the motor vehicle due to abuse or misuse.

Ex. 3. The lease also gives Fuller or M&S Steel an option to purchase the vehicle at the end of the lease period for $47,000. Kemplen's counsel, argued, that because the lease term had not ended, pursuant to the terms of the lease, the diminution in value is not yet due and that setting any diminution in value at the time of the accident instead of June 2020, when the lease ends, is improper.

the evidence and assessing credibility, the jury could have determined that Fuller was not to be believed.

Appellant's App. Vol. II p. 27. The jury likely found Kemplen to be a much more relatable and credible witness than Fuller. M&S Steel has not convinced us that it suffered prejudice as a result of any wrongful method of impeachment.

## II. *Indiana Trial Rule 59(J) Motion*

[17] The trial court entered a thorough written order denying M&S Steel's motion for judgment on the evidence and to correct error. *See* Appellant's App. Vol. II pp. 17-28. M&S Steel argues that the trial court improperly denied its motion to correct error under Indiana Trial Rule 59(J). Although M&S Steel filed a motion for judgment on the evidence and a motion to correct error, M&S Steel only argues the Indiana Trial Rule 59(J)[4] standard in its brief. In other words,

---

[4] Indiana Trial Rule 59(J) states:

> **Relief granted on motion to correct error.** The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some of the parties and all or some of the errors:
>
> (1) Grant a new trial;
>
> (2) Enter final judgment;
>
> (3) Alter, amend, modify or correct judgment;
>
> (4) Amend or correct the findings or judgment as provided in Rule 52(B);
>
> (5) In the case of excessive or inadequate damages, enter final judgment on the evidence for the amount of the proper damages, grant a new trial, or grant a new trial subject to additur or remittitur;
>
> (6) Grant any other appropriate relief, or make relief subject to condition; or
>
> (7) In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines

M&S Steel only argues that the trial court erroneously denied its motion to correct error.[5]

[18]    "We will reverse the trial court's decision to grant or deny a new trial only for an abuse of discretion." *Newland Resources, LLC v. Branham Corp.,* 918 N.E.2d 763, 772 (Ind. Ct. App. 2009) (citing *Pendleton v. Aguilar,* 827 N.E.2d 614 (Ind. Ct. App. 2005)). "An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom." *Id.* (citing *Pendleton,* 827 N.E.2d at 624). "'A trial court is advised to use great caution in substituting its evaluation of the evidence for a contrary evaluation made by the jury.'" *Id.* (quoting *Indiana Trucking v. Harber,* 752 N.E.2d 168, 178 (Ind. Ct. App. 2001)).

that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.

In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.

[5] Indiana Trial Rule 50 is the rule for judgment on the evidence; Indiana Trial Rule 59 is for motion to correct error. To the extent M&S Steel attempted to argue the trial court erred in dismissing its motion for judgment on the evidence, that argument is waived. *See* Indiana Appellate Rule 46(A)(8).

[19] First, M&S Steel argues the trial court used an improper standard in reviewing the motion to correct error. "When considering whether to grant a new trial, 'the trial judge has an affirmative duty to weigh conflicting evidence.'" *Warrick v. Stewart,* 29 N.E.3d 1284, 1289 (Ind. Ct. App. 2015) (quoting *Mem'l Hosp. of South Bend v. Scott,* 300 N.E.2d 50, 54 (Ind. 1973)). "The trial judge sits as a 'thirteenth juror' and must determine whether in the minds of reasonable men a contrary verdict should have been reached.'" *Id.* "As the thirteenth juror, the trial judge 1) hears the case along with the jury, 2) observes witnesses for their credibility, intelligence, and wisdom, and 3) determines whether the verdict is against the weight of the evidence." *Id.*

[20] "On appeal, this Court cannot assume the responsibility of weighing conflicting evidence." *Id.* "[A] trial court does not commit reversible error if it denies a new trial where the evidence is conflicting." *Dughaish ex rel. Dughaish v. Cobb,* 729 N.E.2d 159, 169-70 (Ind. Ct. App. 2000) (citations omitted), *trans. denied.* "The mere conflicts or inconsistencies in testimony favoring the verdict do not give rise to mandatory operation of the Thirteenth Juror Principle." *Id.* at 170 (quotations omitted).

[21] M&S Steel contends that the trial court's review in weighing the evidence to determine if a new trial was needed was more akin to the review under Indiana Trial Rule 50(C), which requires the trial court to look at the evidence most favorable to the nonmoving party. *See Am. Family Home Ins. Co. v. Bonta,* 948 N.E.2d 361, 365 (Ind. Ct. App. 2011). The Indiana Trial Rule 50(C) standard and the Indiana Trial Rule 59(J) differ in that:

When a trial court grants a new trial on the basis of a motion for judgment on the evidence pursuant to T.R. 50(C), it must consider only the evidence most favorable to the nonmoving party and may grant the motion only when there is no evidence or reasonable inferences therefrom to support an essential element of the claim. However, when the trial court grants a new trial as a "thirteenth juror" under the provisions of T.R. 59(J), it must sift and weigh the evidence and judge witness credibility. If Rule 50(C) new trial relief is granted, it cannot be on the basis of the "13th Juror" or a review of the evidence. If the trial court is going to "weigh the evidence" then this kind of new trial must come as part of a motion to correct error under Trial Rule 59.

*Id.* at 364-65.

[22] Thus, M&S steel argues the trial court "inherently failed to weigh and sift through the conflicting evidence as a thirteenth juror and abused its discretion." Appellant's Br. p. 10. We do not disagree with M&S Steel that the trial court's order appears to conflate the two standards in its order, and a better practice would have been to consider both of M&S Steel's arguments under Indiana Trial Rules 50(C) and 59(J) separately. The trial court did, however, consider both standards of review in reaching its conclusion that a new trial was not warranted under either motion.

[23] Next, M&S Steel argues that the trial court erred in denying its motion to correct error because the evidence does not support the judgment. Specifically, M&S Steel makes the following arguments: (1) Parnell Avenue goes uphill and curves slightly; (2) the evidence conclusively establishes that Fuller was travelling at a reasonable rate of speed; (3) Kemplen admitted that "had [he] not

made that turn . . . this collision would have never occurred"; and (4) the trial court erred as a matter of law in concluding the parties, other than Kemplen, could have been at fault for the collision. Appellant's Br. p. 13. In conducting the Indiana Trial Rule 59(J) review, the trial court weighed the evidence and made the following findings:

- "[A]lthough the evidence supports the notion that Fuller was driving under the speed limit, the Court does not conclude that this in and of itself makes Fuller's speed reasonable." Appellant's App. Vol. II p. 26.

- Kemplen provided the jury with "several other contributing factors that could have led the jury to conclude that Fuller and/or Carrigan were at fault, and Kemplen was not[,]" and the trial court "does not conclude that there was only one contributing factor to the collision, namely Kemplen's failure to yield, upon which the jury could rely." *Id.* at 27.

- Kemplen was a "much more relatable and credible witness than was Fuller," and, in the trial court's view, based on Fuller's conduct and testimony at trial, Fuller "may not have favorably impressed the jury." *Id.*

- "The testimony and evidence presented at trial would allow reasonable people to differ as to the result, and thus, judgment on the evidence is improper." *Id.* at 28.

- And, finally, "there was a dispute in the evidence, and the fact-finder could have come to several conclusions." *Id.*

[24] The trial court acknowledged that, although it may have reached a different result than the jury, "the Court's role in reviewing the verdict upon this motion is not to replace the jury's decision-making function." *Id.* During the trial, at times, the evidence conflicted and/or witnesses gave varying versions of events regarding the incident. Accordingly, the trial court did not commit reversible error in leaving the decision of the jury intact.[6] The trial court did not err in denying M&S Steel's motion to correct error.

## Conclusion

[25] Any error resulting from the improper impeachment of Fuller was not prejudicial. The trial court did not abuse its discretion in denying M&S Steel's motion to correct error. We affirm.

[26] Affirmed.

Najam, J., and Vaidik, J., concur.

---

[6] Because we conclude the evidence conflicted, and the trial court was not required to grant a new trial, we do not squarely address M&S Steel's argument that the trial court improperly interpreted *Estate of Pfafman v. Lancaster,* 67 N.E.3d 1150, 1163-64 (Ind. Ct. App. 2017), *trans. denied.* There, a panel of our Court reversed the trial court's entry of a new trial as the "trial court's findings and conclusions [did] not adequately address" that the jury could have allocated fault to a non-party "based upon the relative degree of causation attributable to them." *Id.* at 1164. Thus, our Court found that the trial court's "findings and conclusions were not based on a complete analysis of the law," and the trial court did not make "a clear showing that the ends of justice required a new trial." *Id.* (quotations omitted).